WELLES *vs.* THE NEW YORK CENTRAL RAIL ROAD COMPANY.

Where an individual is traveling upon a rail road, by virtue of a free ticket which entitles or permits him to ride in the cars of the company at his own pleasure, the ticket having an indorsement on the back thereof by which he " assumes all risk of accidents, and expressly agrees that the company shall not be liable, under any circumstances, whether of negligence by their agents, or otherwise, for any injury to the person, or for any loss or injury to the property" of such passenger, and he suffers an injury to his person by means of a collision between the passenger train and a freight train left standing upon the track, the company is not liable therefor; this being a case of injury within the contemplation of the parties, and they having a *right* to stipulate for an exemption from liability under such circumstances.

Carriers of passengers are not obliged to carry any person without compensation, at their own risk. They have a right so far to restrict their liability, in such a case, as to contract with the passenger that he shall take his own risk, in respect to loss or damage from injuries resulting from mere negligence.

They may contract for exemption from loss arising from the negligence of their servants or agents ; and where there is a special agreement to that effect, carriers are not liable for any injuries, except such as are the result of fraudulent, willful or reckless misconduct on their part, or on the part of their officers or agents.

What amounts to gross negligence, or such negligence as will imply fraud or bad faith on the part of the carriers.

APPEAL from a judgment entered at a special term, after a trial at the circuit. The action was brought to recover damages for an injury sustained by the plaintiff while riding on the cars of the defendants, under a special contract between the parties. By a stipulation between the attorneys for the respective parties, the following facts were agreed upon :

*First.* That on or about the 18th or 19th day of September, 1855, the defendants were a corporation, duly incorporated under the laws of the state of New York, and that their corporate name was and is " The New York Central Rail Road Company ;" that, as such corporation, they were the owners and proprietors of the rail road from Albany to Buffalo, known as the New York Central Rail Road, and of the cars then running thereon, for the conveyance of passengers and freight respectively, as hereinafter mentioned. *Second.* That on said 18th or 19th of September, 1855, the plaintiff took passage at

Lyons for Albany, on one of the express passenger trains of the defendants, on said road, being a regular night express passenger train. *Third.* That while said plaintiff was seated in the forward passenger car of said train, on its way to Albany on said trip, and near or at a place called West Albany, and while said train was running at a high rate of speed, a collision occurred between said passenger train and certain cars of a freight or cattle train, standing on the same track of said road, by means whereof the body of the baggage car, on said passenger train, was driven backwards into the said forward passenger car, where the plaintiff was seated, as aforesaid, so as to strike said plaintiff upon the face and head, and that the plaintiff was thereby wounded, bruised and cut in the head and face, and that the damages of the plaintiff, in consequence of such wounds, bruises and cuts, amount to the sum of $750. *Fourth.* That such collision occurred, and such injuries to the person of the plaintiff were occasioned, through and by means of the carelessness and negligence of the defendants and their agents and servants in charge of said passenger train and of such freight or cattle train, at the time of such collision. *Fifth.* That when the plaintiff took passage as aforesaid, and when such collision occurred, and such injuries to his person were received as aforesaid, he the said plaintiff was riding as a passenger on, and as holder of a ticket theretofore delivered to him by the defendants, partly written and partly printed, of which the following is a copy, to wit: " FREE. New York Central Rail Road. Not transferable. Conductor will pass P. C. Wells, Dewey & Co. until Jany. 1, 1856, unless otherwise notified. (Signed) C. Vibbard, Supt." On the back of which ticket is printed as follows : " The person accepting this free ticket assumes all risk of accidents, and expressly agrees that the company shall not be liable, under any circumstances, whether of negligence by their agents, or otherwise, for any injury to the person, or for any loss or injury to the property of the passenger using this ticket. If presented by any other person than the individual named therein, the conductor will·

Welles *v.* New York Central Rail Road Company.

take up this ticket. This pass is not to be presented or used by the holder to procure a pass over any other road."

The jury found a verdict in favor of the plaintiff, for $750, the sum agreed upon in the stipulation as his damages, besides costs. For which sum judgment was entered, and the defendants appealed.

*E. H. Avery,* for the appellants.

*F. E. Cornwell,* for the respondents.

E. DARWIN SMITH, J. In the conclusion of the judge at the circuit, that the plaintiff is entitled to recover in this action, I find myself unable to concur. The plaintiff received a free ticket from the defendants, entitling or permitting him to ride in their cars at his own pleasure, with an indorsement on his ticket by which " he expressly agreed that the company should not be liable under any circumstances, whether of negligence by their agents or otherwise, for any injury to his person or for any loss or injury to his property." These were the terms and the conditions on which the defendants gave and the plaintiff received his ticket. It implies, in effect, an agreement on the part of the plaintiff to take the risk of all the casualties attending rail road travel, so far as they arose or might arise or result from negligence on the part of the officers and agents of the defendants. The defendants are a corporation, engaged in carrying persons and property as common carriers. They are necessarily obliged to carry on their business through the instrumentality of numerous officers and other agents. From the character of the business, the great liability to accidents or injuries to person and property resulting more or less in most cases from some degree of neglect or want of care on the part of some of their numerous employees, and the serious character of such injuries, the company might well desire to restrict their liability to damages from such casualties to the narrowest possible limit. In respect to persons

carried for hire, they could obviously do nothing to restrict their liability, or that should excuse them from the exercise of the utmost diligence and care. But they are not obliged to carry any person without compensation, at their own risk. They must have the clear right to contract with any such person that he must take his own risk. He would ride in the same cars with other passengers, and would be liable to the same and no greater accidents, but as he would pay nothing for his fare he might well agree to take his own risk. He knew that the company was liable to suffer great loss and damage from the negligence of its agents, and that it would naturally seek to avoid, or had a great interest in preventing, such loss by every reasonable precaution. But with the best of care, and the utmost caution, some accidents, he knew, would unavoidably occur from the unforeseen negligence, carelessness or want of skill of its employees. Against all such accidents, "*under any circumstances, whether of negligence by the agents of the defendants or otherwise, the plaintiff expressly agreed to assume and take his own risk.*" This is the *bargain.* It is not unlawful. It is distinctly and fairly made and clearly understood. I cannot see why it is not fully binding, to the extent of exempting the defendants from all loss or liability to loss or damage from injuries resulting from mere *negligence.* I do not see any ground to stop short of this exemption from loss or liability on the part of the defendants, within the entire range or scope of *negligence* not arising from bad faith or fraud. I see no ground to measure the *degrees* of negligence. The contract makes no degrees. It is sweeping, and includes all *negligence.* It makes no exception of gross negligence. The plaintiff and defendant both knew that there was a liability to accidents from *gross* as well as from slight negligence. They use the word negligence in its general legal sense, to embrace all accidents or injuries resulting from carelessness or mere *non-feasance* of the defendants' agents. Nothing else, it seems to me, will satisfy the fair meaning—the plain import—of the contract. The plaintiff's

Welles *v.* New York Central Rail Road Company.

injury resulted from a collision between the cars of the train in which he was riding as passenger, and some cars standing on the track. It was of course a case of negligence to have such a collision occur; but collisions do happen quite frequently, and that was well known to the plaintiff and to all the public. This cause of injury was most obviously within the contemplation of the parties, for it is the most fruitful cause of accidents and loss and injuries in rail road traveling. All collisions of trains must be the result of negligence in some degree, perhaps in the scale or degree of *gross negligence.* But with this ticket as his title and authority to ride in the defendants' cars, and as the contract on which the defendants agreed to carry him, I think the defendants are not liable for any injuries except such as were the result of fraudulent, willful or reckless misconduct on the part of the defendants' officers or agents. I put the exemption from liability from injuries resulting from negligence entirely upon the terms of the express agreement between the parties. If the plaintiff had been riding, at the time, gratuitously upon simply a free ticket, or upon the invitation of the defendants as matter of favor, courtesy or otherwise, the defendants would be liable. The cases of *The Philadelphia and Reading Rail Road Co.* v. *Derby,* (14 *How. U. S. Rep.*) and of *Steamboat New World* v. *King,* (16 *id.* 477,) and 5 *Indiana,* (*Porter,*) 340, fully established the rule that the common law liability of a carrier applies in such cases to all injuries resulting from negligence. A common carrier, like other bailees for hire, may clearly limit his risk by express contract. Although long doubted, this is now distinctly settled. (*Dow* v. *New Jersey Steam Navigation Co.,* 1 *Kernan,* 490. *Alexander* v. *Green,* 7 *Hill,* 533. *Wells & Tucker* v. *The Steam Navigation Co.,* 4 *Selden,* 381. *Parsons* v. *Monteath,* 13 *Barb.* 360. *Alexander* v. *Greene,* 2 *Hill,* 20; 7 *id.* 533.) A carrier cannot contract for an exemption from losses arising from his own personal *fraud* or *gross negligence.* Such a contract would be *contra bonos mores,* and void. (13 *Barb.* 360. *Wells* v. *Steam Nav. Co.,*

4 *Selden*, 381.) But in the last case Judge Gardiner says, " Although the law will not suffer a man to claim immunity by contract against his own fraud, I know of no reason why this may not be done in reference to *fraud or felony committed by those in his employment.*" If this be so, certainly he may contract for exemption from loss arising from the *negligence* of his servants and agents. This is the precise distinction that I would make, and is the precise point upon which I cannot agree with the decision at the circuit. But the judge at the circuit put the liability of the defendants on the ground that the collision which caused the injuries was *prima facie gross neglect.* And he held that the defendants could not stipulate for exemption from liability for such neglect. The distinction between the several degrees of negligence is too nice and artificial for any clear definition or practical application. As Judge Curtiss remarks in 16 *Howard,* 477, " it may well be doubted if these terms can be usefully applied in practice." Judge Story also remarks, *(Story on Bailm.* § 11,) that " the law furnishes no definition of the terms gross negligence, or ordinary negligence, which can be applied in practice ;" and these distinctions are utterly repudiated by the late civil law writers. But if by gross neglect the circuit judge means such neglect as implies *fraud* or *bad faith* on the part of the defendants, I can agree with him in his conclusions, that for such negligence the defendants, in the same manner and upon the same principles with other bailees, would be liable ; but I do not think the evidence warrants any such finding, as matter of fact. A bailee who is only liable for gross neglect is responsible only as a *naked depositary without reward,* which is the first class of bailments as classified by Sir Wm. Jones, *(Jones on Bailm.* 36 ;) and the defendants' liability, I think, falls within the rule applicable to this class. This class of bailees, he says, (p. 46,) " is only answerable for a *fraud* or for *gross neglect, which is considered evidence of it,* and not for such ordinary inattention as may be compatible with *good faith.*" If this *gross negligence* which is *evidence of fraud,*

Welles *v.* New York Central Rail Road Company.

can be rebutted by evidence that the depositary keeps his own goods of the same kind in a manner equally negligent, then he is not liable. (4 *Burr. R.* 2300. *Ld. Raym.* 655. 2 *Hawks,* *N. Car.* 145. *Edw. on Bailm.* 69, 70.) It is enough that the bailee keeps the property in the same manner as he does his own. (*Idem,* 72. 17 *Mass. Rep.* 479. *Foster* v. *Essex Bank, Id.* 498, 9.)

It seems to me very clear, that there is nothing in this case to warrant the finding that the defendants were guilty of such gross negligence as is equivalent to fraud, or *evidence* of fraud or bad faith. The plaintiff was riding in a car of a train which carried also the servants of the defendants, whose lives were in the same jeopardy with that of the plaintiff. A collision was likely to destroy much property of the defendants, and cause much loss of life besides the lives of their servants and agents, for which the company would be liable in heavy losses. There is and can be nothing in such a case upon which to base a charge of fraud or bad faith on the part of the defendants' agents or officers. There was not such gross negligence as implies *fraud or is evidence of it.* The defendants' officers and agents took the same care of the plaintiff that they did of themselves and of the property of the defendants and of the large number of passengers for whose safe passage they were bound to watch and guard with the strictest degree of diligence and care. In such a case I cannot think the defendants liable for the injuries sustained by the plaintiff; and the judgment of the special term ought to be reversed and a new trial granted; costs to abide the event.

JOHNSON, J., concurred.

T. R. STRONG, J., dissented.

Judgment reversed.

[MONROE GENERAL TERM, March 1, 1858. *Johnson, T. R. Strong* and *Smith,* Justices.]