SMITH, adm'r of Ward, *vs.* THE NEW YORK CENTRAL
RAIL ROAD COMPANY.

A carrier of passengers may, by positive stipulation, relieve himself, to a limited extent, from the consequences of his own negligence or that of his servants. But to accomplish that object the contract must be clear and explicit in its terms, and plainly covering such a case.

W. made a contract with the defendant to transport a lot of cattle upon its rail road, and was traveling with them, under what was called a "drover's pass," which contained a provision that "the persons riding free to take charge of the stock, do so at their own risk of personal injury from whatever cause." *Held* that this stipulation in the contract did not exempt the carrier from liability for gross negligence, or for the want of ordinary care. That the carrier was liable for what—independent of any peculiar responsibility attached to its calling or employment—would be regarded as fault or misconduct on its part; and was bound to observe reasonable care and precaution, employ persons of requisite skill, and possess vehicles fit for use and adapted to the nature of the service required.

And an action being brought by the administrator of W., against the carrier, for negligence in causing the death of W. by using a flattened wheel, which caused the car to bound and jolt, and finally threw it off the track, it was *further held* that it was not erroneous to charge the jury that it was the duty of the defendant to provide competent and careful men, safe vehicles, and a properly constructed track, so far as ordinary care and diligence would enable them to do so; and that if the jury should find that the injury was caused by the insufficiency of the car by means of a defective wheel— the defendant's employees having been warned of the condition of the running apparatus of the car and its danger—they would be justified in considering the use of such a car in the transportation of passengers a reckless exposure of life, amounting to gross negligence, entitling the plaintiff to recover.

THIS is a bill of exceptions ordered to be heard in the first instance at the general term. The action was brought to recover damages for alleged negligence on the part of the defendants in causing the death of Joseph Ward, the plaintiff's intestate, on the 24th day of March, 1855, and was tried before Mr. Justice EMOTT, at the Albany circuit, in March, 1856, when the plaintiff recovered a verdict for $5000. The alleged negligence consisted in the use of a flattened wheel, which caused the car to bound and jolt, and finally threw it off the track, when the plaintiff's intestate, following the example of the brakeman and others, jumped from the car and received

Smith *v.* New York Central Rail Road Company.

injuries, which resulted in his death in an hour afterwards. The defense was that the car was not a dangerous one, and that the accident resulted from a broken rail, against which no prudence or precaution could guard, and that the negligence of Ward contributed to the injury; also that Ward was traveling under a free pass, and under a contract by which he agreed to take upon himself the risk of personal injury. There was evidence on both sides, tending to sustain either theory; to wit, that the accident was caused by the employment of an unfit and not road-worthy car, of the danger of using which the conductor and employees were seasonably warned, before the occurrence of the casualty; and on the other hand, that it was occasioned by a broken rail which had been examined shortly previous, and no imperfection discovered therein. The plaintiff's intestate was transporting a lot of stock on the rail road, and was traveling under what was called a drover's pass, which provided that the holder "takes all the responsibility as to the injury of himself or stock," and had also entered into a written contract with the defendants which recited the price at which the stock were to be transported, (alleged therein to be reduced rates in consequence of the owner assuming certain risks,) and provided that the intestate should assume certain risks arising from the temper and conduct of the stock, their detention on the road, from their being crowded or injured in consequence of the burning of their feed, and also from insecurity in the floor, frame or doors of the cars; and that said Ward should load, unload and tranship them at his own risk. The contract also contained this clause : "And it is further agreed between the parties hereto, that the persons riding free, to take charge of the stock, do so at their own risk of personal injury from whatever cause." The judge refused to nonsuit the plaintiff, and charged the jury, among other things, that there were two questions in the case : 1st. Whether the death of Mr. Ward was the result of *culpable* negligence of the defendants or their agents; 2d. Whether his own negligence contributed to the result. He further charged that it was not

strictly accurate to say that Ward was traveling under a free pass, but that the sum paid was manifestly intended as a compensation for his passage, as well as the transportation of his stock. That if he had been on the car under a free pass, this fact would not have absolved the defendants from liability for injuries caused by their culpable negligence; and that the agreement did not relieve them from responsibility for injuries occasioned by their own gross negligence. That the fair construction of the agreement was that Ward assumed the risk— from whatever cause—of such personal injuries as were not occasioned by wrongful and culpable negligence on the part of the defendants and their agents; that if the meaning of the agreement was that no action would lie against the defendants for any negligence or imprudence, it was void as against public policy. That the plaintiff being lawfully in the cars, the defendants were not relieved from responsibility for the injury, if it resulted from their *culpable neglect* to exercise those precautions which *ordinary care* demanded from them in the business of carrying passengers. That if the flattened wheel caused the car to leave the track, then it was *great negligence* to use it, especially after its danger had been pointed out, as was proved to have been the case. That either the defendants did all that prudence, skill and foresight could do, *or they were grossly negligent.* That the jury must find for the plaintiff if the death of the intestate was caused by *gross negligence* on the part of the defendants, without fault on his part; otherwise they must find for the defendants. That if the jury should find that the injury was caused by the insufficiency of the car—that a car with a flattened wheel like this might be expected to leave the track when in rapid motion— and that the condition of the wheel produced this result, the defendants' employees having been warned of the condition of the running apparatus of the car and its danger, they would probably have little difficulty in finding that the use of such a car in the transportation of passengers was a reckless exposure of life, amounting to gross negligence. That it was the

Smith *v.* New York Central Rail Road Company.

duty of the defendants to provide competent and careful men, safe and roadworthy vehicles, and a properly constructed track, so far as *ordinary care and diligence* would enable them to do so, and the agreement proved could not relieve them from this duty ; and if they failed to do this in any respect in the present instance, the jury would find the *first* issue (whether Ward's death was the result of culpable negligence of the defendants or their agents) in favor of the plaintiff. To every part of this charge, separately and severally, the defendants (as the case states) duly and seasonably excepted. The defendants moved for a nonsuit, upon the ground that the special agreement limited the liability of the defendants, and that the accident was within the risk voluntarily assumed by the plaintiff; and also that under said agreement the defendants were only liable for willful misconduct, of which there was no evidence. The court denied the motion, and the defendants excepted. The defendants' counsel requested the court to charge the jury that the special agreement was a legal and binding contract between the parties, and furnished the rule by which, alone, the rights of the parties to this action were to be determined. The court declined to charge in the terms of the request, and the defendants' counsel excepted. The defendants' counsel also asked the court to charge that under said agreement the defendants were only liable for willful misconduct, of which there was no evidence. The court declined so to charge, and the defendants' counsel duly excepted.

*John H. Reynolds,* for the defendants.

*John K. Porter,* for the plaintiff.

*By the Court,* HOGEBOOM, J. By the principles of the common law the responsibility of common carriers was very severe. They were liable for all losses, except those occurring by the act of God, or the enemies of the country. Possessing in some respects a public character or employment, they were held incapable, so long as they acted in that capacity, of divesting themselves of their common law responsibilities. After a time the rule was to some extent relaxed, and they were allowed by public notice brought home to their customers, to lessen, in some respects, the degree of their responsibility. But this was

for a long time a vexed question in the courts, and has never obtained in this state. The law is well settled to the contrary of such a right. (19 *Wend.* 234, 251. 1 *Kern.* 490.)

Nevertheless it was felt that the rule, in many cases, operated harshly, and was not altogether adapted to the demands of an expanded commerce. Common carriers finding themselves foiled by the courts in attempting to restrict their liability by a public notice, resorted to another expedient—that of making a *special contract* with the owner or shipper of the goods for a diminished risk. The right to do this was for a time disputed, but it gradually obtained a foothold in the courts, and may be now regarded as firmly established. (1 *Kern.* 490. 14 *Barb.* 524. 13 *id.* 353.)

But even this right has been held, on principles of public policy, not to be without qualification. A carrier of goods cannot stipulate for absolute exemption from all liability. He cannot covenant against his own fraud or willful misconduct. (4 *Seld.* 375. 13 *Barb.* 360.) And it is said, in some cases, that he cannot covenant against his own *gross* negligence. (13 *Barb.* 360. 7 *Hill,* 533.) The principle is, that undertaking to carry, he must do all that common prudence requires to carry safely. He undertakes a task, and he must perform it. He is not to be permitted to lay aside that degree of care and precaution which good faith and a proper sense of the importance of his trust, and the value of the property committed to his charge, require at his hands. (4 *Seld.* 375.)

And yet it is possible that as respects the carriage of goods, where no principle of public policy is violated, and where it may be rationally supposed that a keen sense of self interest will protect parties from improvident contracts, a common carrier may be regarded as authorized to make any special agreement he can fairly succeed in making with his customer, for a qualified risk, always excepting agreements for indemnity against his own fraud or willful misconduct.

A somewhat different rule obtains in regard to carriers of human beings. They are not in the strict sense, perhaps not in any just sense, of the term denominated common carriers. (15 *N. Y. Rep.* 446. *Story on Bailm.* § 498.)

The common law imposes upon the carriers of passengers the duty of transporting them with the highest degree of care and precaution. They are not, as common carriers are, absolute insurers (within the limitation above mentioned) for the safe delivery of their passengers at the point of their destination; but they are bound to exercise the utmost care and the most rigid precaution. (1 *Duer*, 233. 16 *Barb.* 353.)

Very slight negligence will make them liable to an action. They are charged with the care of human life, and it is right that they should be held to a most rigid responsibility. Nevertheless it is quite certain, under the modern decisions, that as in the case of carriage of goods, this responsibility may be restricted; not by a public notice posted or published; not by a notice brought home to the knowledge of the passenger himself, for that is still regarded as only the act of one party; but by a special agreement. (6 *How. U. S. R.* 344. 26 *Barb.* 641.) It seems to be settled, in deference to the great principle of allowing parties to make their own contracts, where no rule of public policy or of positive law is violated, that parties may contract for a less burdensome obligation upon the carrier of passengers than is imposed by the principles of the common law. (26 *Barb.* 641. 1 *Kern.* 490. 14 *Barb.* 524.)

It does not seem to be expressly settled how far this restriction may be carried. It is generally conceded that it cannot be carried to the extent of relieving the carrier against the consequences of his own fraud or willful misconduct. (*Cases before cited.*) And I do not think it ought to be permitted to relieve him against the fraud or misconduct of his servants or employees. It has been suggested by an eminent judge, that it might be permitted to cover this latter ground. (*Per Gardiner, J., in Wells* v. *St'm Nav. Co.*, 4 *Seld.* 381.) But I think the argument unsound. It would be trifling with human life. Principles of public policy—a proper regard for the safety of the subject and the citizen—in my opinion, forbid the application of such a rule, or the concession of such a power. Perhaps, also, a party should not be allowed to bargain for absolving a carrier of passengers from *gross* negligence; and by that, in this connexion, I mean a degree of negligence which

amounts to fraud or criminality, and implies a reckless disregard of human life, and the absence of proper moral sentiments.

Making these exceptions, I am not prepared to say that parties may not, if they do it understandingly, stipulate to relieve the carrier to any extent upon which they may deliberately agree, from the common law obligations of his contract, and from any degree of negligence to which the passenger, with a full consciousness of his rights, may consent.

We come now to the consideration of the contract itself, its nature and effect. Having ascertained what the parties might lawfully do, let us see what in point of fact they did do. I think the judge at the circuit was right in saying that Ward was not, in the strict sense of the term, a *gratuitous* passenger. If .the compensation paid was professedly for the transportation of the stock, it involved the condition that a person was to be permitted to ride along to take care of them.  This was indispensable, and a convenience to both parties. It was a part of the contract. The agreement was, that the "persons riding free, to take charge of the stock, do so at their own risk of personal injury, from whatever cause." This language, it must be confessed, is very broad and comprehensive, and yet, by the argument of the defendants' counsel, it is conceded that it has limitations. It is admitted that it does not cover injuries arising from the fraud or the willful misconduct of the defendants. But this, it will be said, is a limitation imposed *by law,* and not by the agreement .of the parties.   I think it is *by both;* for the law will neither suffer it to be done, nor presume that the parties intended it. We must put ourselves in the place of the parties, and see what they really intended.   Was this clause designed to cover any risk arising from the misconduct of the carrier, either from his *willfulness* or his *negligence?*   Negligence is the omission of care.   Did the parties mean to say that if the carrier omitted the ordinary precautions which a man observes in taking care .of himself or of his own property, he should be exempt from liability?  Did the parties contemplate a license to be guilty of .negligence?   If such a clause had been expressly incorporated into the contract, so that the passenger might have read it, would he have signed it?   There are risks incident to the

transaction, to which this clause might naturally and properly apply; risks from the stock themselves; risks from detentions along the way; risks from the necessity of moving about the cars for the purpose of feeding and taking care of the stock; risks from the increased difficulties and perils of operating a train of cars heavily incumbered with live stock; risks incident to the management of every rail road train, and inherent in the very nature of the business, and not always possible to be avoided, even by the exercise of the utmost precaution. Against such risks we may well conclude the parties intended to contract; but to assume that the passenger intended to issue a license for misconduct, or pay a premium for negligence, is more than I am willing to believe.

We are not without authority on this point. In the case of the *N. J. Steam Nav. Co.* v. *The Merchants' Bank*, (6 *How. U. S. R.* 383,) which was an action against a common carrier for the loss of goods by *fire*, the clause on which the carrier relied for exemption was, "at the risk of the master and owners." The court say, " The language is general and comprehensive, and might very well comprehend every description of risk incident to the shipment. But we think it would be going further than the intention of the parties, upon any fair and reasonable construction of the agreement, were we to regard it as stipulating for *willful* misconduct, *gross* negligence or want of *ordinary* care, either in the seaworthiness of the vessel, her proper equipments and furniture, or in her management by the master and hands."

A similar conclusion was arrived at, where the question arose upon the liability of the carrier for the loss of live stock by an accident upon a rail road, in the case of *Sager* v. *The Portsmouth Rail Road Co.*, 1 *Amer. Railway Cases*, 172.) In that case the language of the contract was, " We take upon ourselves the risk of all and any damages that may happen to our horses, cattle, &c., and that we will not call upon said rail road company, or any of their agents, for *any damages whatsoever.*"

In the case of *Alexander* v. *Greene*, (7 *Hill*, 533,) the question arose upon a contract for towing a canal boat, and the language of the contract was, "Capt. H., of steamboat N., take in tow for Albany canal boat A. &c., *at the risk of the master and owners thereof*, and collect $30." The canal boat being lost by being run upon a rock, and her cargo lost, the supreme court held that the owners of the towing vessel or steamboat were exempted from liability by the broad and unqualified language above quoted. But the court of errors reversed the judgment. Senator Bockee (*p.* 546) says, "The defendants must be responsible at least for gross negligence." "But I go farther, and am of the opinion, that, notwithstanding the permit, the exigencies of this case require the owners of the steamboat to respond for losses occasioned by the *want of ordinary* skill and care on the part of their agents." "True, as a general rule, the operation of law may be controlled by the agreement of the parties; but this rule is subject to many exceptions and qualifications. If the permit had been intended to exempt the defendants from the consequences of their own negligence, which the law fixes upon them, such intention ought to have been clearly and unequivocally expressed, so as to leave no room for doubt or misconstruction." Senator Lawrence says, (*p.* 548,) "Under the most favorable view of the subject, we are bound to hold the defendants responsible for *ordinary care* and skill." Senator Porter says, (*p.* 560,) "I have no hesitation in saying that the contract will not, in my opinion, admit of a construction that shall protect the defendants from a loss arising from gross negligence." See also further observations by him upon the contract and its proper interpretation, at page 559. This case was followed, under a contract of a precisely similar description, by our court of appeals in *Wells and Tucker* v. *The Steam Nav. Co.* (4 *Seld.* 375.) It was there held, in accordance with the charge of the judge at the trial, that the clause in question did not protect the owners of the steamboat from injuries arising from the gross negligence of their servants

navigating it, although not occasioned by fraud or want of good faith; and that a stipulation in a contract to exempt from gross negligence, must be specific and distinct; and that it will not be implied from a clause containing a general expression which might otherwise be so construed. This was as far as the questions arising in the case required the court to go; but Judge Mason, in pronouncing the opinion of the court, uses language which imports that the defendants would be responsible for any degree of negligence, or for negligence in a general sense, without characterizing it as gross. He says, (*p.* 380,) "And it is certainly much more reasonable to infer that when they declare that the boat shall be towed at the risk of the owners, they intended such risks as were incident to the navigation, where proper care and skill were exercised, rather than risks to which it might be exposed by the *negligence* of the persons in charge of the steamboat." "As there are risks of the navigation to which the special clause in the permit may naturally be applied, and more consistently with honesty and fair dealing than if extended to the *negligence* of the defendants, it is undoubtedly the duty of the court so to apply it. Such a construction is consonant with the probable intention of the parties."

In the case of *Moore* v. *Evans*, (14 *Barb.* 524,) the question arose upon a contract to transport goods from Buffalo to Milwaukie, at the risk of the owner. The circuit judge had held that the defendant could not by special agreement restrict his liability as a carrier, and his decision was reversed. Judge Wright, who delivered the opinion of the court, principally discussed the question whether a carrier might by express contract restrict his common law liability, and I think he successfully maintained and demonstrated the affirmative of that proposition. In remarking upon the effect of the contract, he uses this language, (*p.* 530,) "The goods were to be transported at the risk of the owner. The agreement exempted the defendant from losses arising out of events and accidents against which he was a sort of *insurer*. As he had

undertaken to carry, however, from Buffalo to Milwaukie, the like degree of responsibility attached to him as to a private person engaged casually in the like occupation. He was answerable for his own *negligence* or misconduct or that of his servants. But the burden of proving that the loss was occasioned by a want of *due care,* or by *gross negligence,* was on the plaintiff." · " When the carrier's liability is restricted by special agreement, the onus is shifted upon the employee. If *negligence* or misconduct be alleged, the burden of proof is on the latter."

In some of these cases, it will be observed that ·the degree of negligence which is held not to be covered or protected by language nearly similar to that in the case at bar, is not accurately defined. For my part, I think not only gross negligence is not protected by the terms of the contract, but what is termed *ordinary* negligence, or the withholding of ordinary care, is not so protected. I think, notwithstanding the contract, the carrier is liable for what, independent of any peculiar responsibility attached to his calling or employment, would be regarded as fault or misconduct on his part. He must, like a person casually or temporarily, or for a single occasion, engaged in the employment in question, observe reasonable care and precaution, employ persons of requisite skill, and possess vehicles fit for use and adapted to the nature of the service required. I do not believe *this* contract exempts him from any such responsibility. He may, I think, by positive stipulation relieve himself, to a limited degree, from the consequences of his own negligence or that of his servants. But to accomplish that object, the contract must, in my opinion, and as is, said in several of· the cases above cited, be clear and specific in its terms, and plainly covering such a case.

I am aware of the difficulty of defining in terms the difference between slight, ordinary and gross negligence, and of the confusion that sometimes arises in their application. In truth it is impossible, by any general definition, to convey to the

mind any such distinct and intelligible impressions of the differences between them as shall enable us to apply it as a standard to all cases that may arise, and certainly determine to which class a particular case belongs. But that arises from the imperfection of language, and from the infinite diversity of human conduct and events. It is a question of fact, or rather of mixed law and fact, to be determined by the circumstances of each particular case. Some confusion, too, has arisen, I think, from the want of precision with which the terms are sometimes employed in judicial opinions.

The view here taken of the contract in question does not conflict, I think, with the decision of a co-ordinate branch of this court, in the case of *Welles* v. *The N. Y. Cent. R. R. Co.*, (26 *Barb.* 641.) The contract (if such it was) in that case was, "That the company shall not be liable, under any circumstances, whether of negligence by their agents or otherwise, for any injury to the person, or for any loss or injury to the property of the passenger using this ticket." In that case *neligence* was expressly stipulated for, (if stipulated at all,) and no degrees being mentioned, I think it covered all degrees of *mere* negligence. It was conceded that even under such a contract the defendants were liable for injuries which were the result of fraudulent, willful or *reckless* misconduct. But for this decision, I should have had some doubt within the principle of *Dorr* v. *The New Jersey Steam Navigation Co.*, (1 *Kern.* 485,) and other adjudged cases, whether the mere acceptance of a passage ticket, with a notice like the one above mentioned indorsed thereon, would amount to such a special contract, signified by the mutual and intelligent assent of both parties, as would alter their ordinary legal relations towards each other. It is enough, however, to say that the facts of that case withdraw it from the operation of the rule established in the case at bar.

It only remains to consider whether the instructions given by the circuit judge to the jury violate the rules of law above laid down for the interpretation of the contract in

question. And I am unable to see that they do, unless, possibly, in a single particular to which I shall presently refer. The general current and tendency of the judge's charge to the jury was to exempt the defendants from responsibility, unless they had been guilty of gross or culpable neglect. This idea was expressed in considerable variety of phrase, but still, I think, the jury could scarcely have been misled in that particular. It is true he did not define what in all cases amounted to gross or culpable neglect, nor was he called upon, or invited to do so. As before stated, it was not susceptible of precise definition, nor are any of the other numerous terms employed susceptible of that accurate definition which will make a perfectly clear impression on the mind, disconnected from the facts of the case. The terms care, prudence, precaution, negligence, misconduct, are all difficult of precise definition, and can only be defined by nearly synonymous terms; or by a circumlocution of words which may help to illustrate their meaning; or by being considered in connection with the facts of the case. It is adjudged that *gross,* that is very great, marked or excessive negligence will make the carrier liable. Can it be doubted that *culpable,* that is blameworthy, inexcusable or criminal negligence would do so? Perhaps the judge went so far as to say or imply that the want of *ordinary,* usual, customary, generally observed care would, under the terms of this contract, expose the carrier to an action. Some of the cases or opinions above referred to go this length, and I concur in the rule. I cannot think that the parties to this contract contemplated the withdrawal from this at best hazardous and responsible business, of those reasonable and ordinary precautions which men in general would exercise when employed either permanently or temporarily in a similar vocation. In several of the particulars excepted to, the judge merely expressed an opinion upon the effect of the evidence, and that was never a good ground of exception.

In regard to one clause of the charge, I have entertained some doubt. The judge charged, in substance, that the fail-

ure in *any respect*, by the defendants, to provide competent and careful men, safe and roadworthy vehicles and a properly constructed track, so far as ordinary care and diligence would enable them to do so, required the jury to find that Ward's death was the result of the culpable negligence of the defendants or their agents. Standing alone, this part of the charge would be, I think, untenable, because all this might be true, and the injury nevertheless have resulted from some other cause. And if this was the only part of the charge contained in the case, I should not hesitate to conclude that a new trial ought to be granted for that cause. But various other portions of the charge are found in the case and it is quite apparent from its general scope and tenor that the judge meant to instruct the jury, and did so in other parts of the charge, that the negligence or misconduct must not only exist, but must cause or contribute to the injury. On the whole, I think the jury could not have been misled; and thus understood, I regard the charge as unexceptionable, and am therefore of opinion that a new trial should be denied.

[ALBANY GENERAL TERM, March 7, 1859. *Wright, Gould* and *Hogeboom,* Justices.]