FRANCES R. BISSELL, adm'x, &c. vs. THE NEW YORK CEN-
TRAL RAIL ROAD COMPANY.

Where an individual who had shipped cattle for transportation upon a rail road
    was riding free in one of the cars of the company, for the purpose of taking
    charge of the cattle, under an agreement by which he assumed to do so at
    his own " risk of personal injury from whatever cause," and by virtue of a
    passage ticket having a notice indorsed thereon, stating that he assumed
    " all risks of accident," and agreed that the company should not be liable,
    " under any circumstances, whether of negligence by their agents or other-
    wise, for any injury to the person" &c., and was killed by means of a collision
    between two trains of cars, through the gross negligence of the agents and
    servants of the company ; *Held* that the injury arose from a cause not within
    the risk, and consituted a good cause of action in favor of the administrator
    of the deceased, against the company.
*Held also*, that neither the contract, nor the ticket, could be construed as
    referring to injuries resulting from negligence criminal in its nature, and
    which would have subjected the guilty agent to indictment and punishment
    under the statute.
The case of *Welles* v. *The New York Central Rail Road Company*, (26 *Barb.*
    641,) commented upon, and distinguished from the present case. *Per*
    SMITH, J.

APPEAL from an order made at a special term, denying a
    motion for a new trial.   On the 5th of September, 1856,
Josiah L. Bissell, the husband of the plaintiff, took passage
on the defendants' rail road, from Buffalo to Albany, upon a
ticket received from the defendants, which read on its face as
follows :

" New York Central Rail Road.   Cattle Dealer's Ticket on
Passenger Train.   Good for two days from date.   Conductor
will pass Taylor & Bissell, owners of two cars of live stock,
from Buffalo to Albany.

[*Not transferable.*]

If presented by any other person than the one named herein,
the conductor will take it up and charge the person holding the
same the regular fare.  Sept. 5th, 1856.   D. L. FREMYRE.

[*Turn over.*]                         E. CLARK, jr. Agent."

The following notice was printed on the back :

" The owner of stock receiving this ticket assumes all risks

of accident, and expressly agrees that the company shall not be liable, under any circumstances, whether of negligence by their agents or otherwise, for any injury to the person, or for any loss or injury to the stock of said owner, shipped by stock or freight trains."

On the same day Bissell shipped on board of the defendants' cars, for the firm of Taylor & Bissell, two car loads of cattle, and signed a printed agreement, relative to the transportation of the cattle, which contained the following clause : "And it is further agreed between the parties hereto, that the persons riding free to take charge of the stock, do so at their own risk of personal injury, from whatever cause." On the same day, at about 10 o'clock in the evening, while said Bissell was sitting in the passenger or emigrant car attached to the freight train which carried the cattle, at Port Byron, in Cayuga county, which was waiting for the express passenger train from the west to pass, the express train came up, and the locomotive attached to the express train ran into the car where Bissell was, and killed him and five others. This action is brought under section one of the act of 1847. (*Sess. Laws of that year, ch.* 450, *p.* 575.) The jury found that the death of Bissell was caused by the *gross negligence* of the agents and servants of the defendants. The circuit judge, in his charge to the jury, stated to them the different degrees of negligence as recognized by the common law, and that the defendants could only be held liable for gross negligence. The deceased left a widow, who is the plaintiff in this action. The jury found a verdict in favor of the plaintiff for $5000 damages. The defendants moved for a new trial, and the motion being denied, they appealed to the general term.

*Cox & Avery,* for the appellants. I. As to their *freight and cattle trains,* the defendants are not common carriers of passengers, nor bound to make any provision to receive and transport them. The exercise, therefore, of that strict watchfulness and exact care, which the law requires of common car-

riers, cannot be required by a person casually riding in these trains. (*Murch* v. *Concord R. R. Co.*, 9 *Foster*, 9.) The deceased not being a passenger, but riding in the transportation of his live stock, under a special contract defining respectively the rights and duties of the parties, the ordinary implied obligation of common carriers can have no application to this case, further than as required by other rules of law which may *qualify and restrict the power to contract.*

II. The ordinary and extraordinary risks of life, limbs and property, *incurred by those engaged in the transportation* of passengers and property, by sea and land, being in the nature of things, practically inevitable, and necessarily taken, assumed and borne by somebody, are as legitimate subjects of contract as any other contingencies whatever.

III. The general rule, that where one employee is injured by the carelessness of another, the common employer is not responsible, is now too well settled to be disputed. (*Farwell* v. *Boston and W. R. R. Co.*, 4 *Metc.* 49. *Coon* v. *Syracuse and Utica R. R. Co.*, 1 *Seld.* 494. *Russell* v. *Hudson R. R. Co.*, 17 *N. Y. Rep.* 134. *Gilshannon* v. *Stony Brook Co.*, 10 *Cush.* 228. *Albro* v. *Agawam Co.*, 6 *id.* 72, *and cases cited.*)

IV. The foundation of this rule is held in these cases to be, that the party *has contracted* to assume and bear all the risks which are practically incidental to the business. The reason is that the servant *undertakes*, as between him and the master, to run all ordinary risks of the service, including the risk of negligence of the other servants engaged in discharging the work of their common employer. (*Wigget* v. *Fox*, 36 *Eng. L. and Eq.* 492. *Hutchinson* v. *Railway Co.*, 5 *Exch.* 351. *Farwell* v. *Boston and W. R. R. Co.*, 4 *Metc.* 56. *Coon* v. *Syr. and Utica R. R. Co.*, 1 *Seld.* 495. *Russell* v. *Hudson Riv. R. R. Co.*, 17 *N. Y. Rep.* 137.) By these cases, the principle that these risks *lie within the sphere of lawful contract,* is established too strongly to admit of animadversion or debate. No countenance will be found in any of these cases for a distinction on principle between what may be called "*gross neg-*

*ligence,*" and negligence of any other grade. Such a distinction, in its own nature, must be arbitrary, shadowy and vague; depending upon the caprice, temper or passion of differing men, and incapable of being reduced to practical usefulness, because incapable of *a priori* estimation. Modern authorities condemn and repudiate the distinction. (*Mayne on Dam.* 92 *Law Library; Austin* v. *Railway Co.,* 11 *Eng. L. and Eq.* 506, where the cases are collected and compared. *Wylde* v. *Pickford,* 8 *Mees. & W.* 443, 461, 2. *Wilson* v. *Brett,* 11 *Mees.* 113. *Whitney* v. *Lee,* 8 *Metc.* 91. *Hinton* v. *Dibber,* 2 *Q. B.* 646. *Touilleries Droit Civille, 6th Tome, p.* 639. 11 *id. p.* 203. *Mackeldy Manual, du Droit Roman,* 191.) And this court as well as the rest. See *Welles* v. *N. York Central R. R. Co.,* (26 *Barb.* 643,) where the authorities are compared and the distinction condemned. "It may be doubtful whether between *gross negligence* and *negligence,* any intelligible distinction exists. (*Per Ld. Denman, Hinton* v. *Dibber,* 2 *Q. B.* 647. *See also Austin* v. *Man. and Liverpool R. R. Co.,* 70 *Eng. Com. Law Rep.* 475, 6, *per Creswell, J.; Wilson* v. *Brett,* 11 *Mees. & Wels.* 115, *per Wolfe, J.*)

V. If the deceased had contracted with the defendants to go that trip from Buffalo to Albany, *in charge of the cattle,* (without having any interest in them,) we have seen that he could maintain no action against the defendants for personal injuries sustained by the negligence of any agent or servant of the defendants. (*Cases cited under point* 3.) He could probably indeed maintain an action against such servant or agent; in this case against Fogarty, the switchman. Nor would the fact of the dissimilarity or want of relation between the business of the *cattle tender* and that of the *switchman,* avail him, in an action against the company, unless provided for in his contract, (*Russell* v. *Hudson River R. R. Co.,* 17 *N. Y. Rep.* 137;) which shows that such want of relation is only to be regarded in view of the limits of the *implied* contract. But in the case at bar the contract is express, and unquestionably includes the particular risk. As to injuries *to the cattle,* the

contract was lawful and binding. (*Dorr* v. *N. J. Nav. Co.*, 1 *Kern.* 485.) Unless, therefore, the incident of ownership in the cattle creates a disqualification to contract in regard to personal injuries resulting from negligence, this action cannot be maintained without overthrowing the law. The deceased was *pro hac vice engaged in the business* of transporting property; and by his contract expressly recognized that relation, and took upon himself all the risks incidental to the business. This was neither a passenger train, nor a freight train, but a *cattle train.* As to casual *passengers* on freight trains, and freight on passenger trains, see *Elkins* v. *Boston R. R. Co.*, (3 *Foster*, 275;) *Murch* v. *Concord R. R. Co.*, (9 *id.* 9, *and cases cited.*) The case of *Welles* v. *N. Y. Central R. R. Co.*, (26 *Barb.* 643,) differs from the case at bar in this, viz : Welles was on a regular passenger train, and agreed to take the risk if he could ride *free of charge;* but he was *a passenger.* Bissell was on a *cattle train* to look after and take care of cattle; his position was necessary to the transportation of his property; either he or some other man *must have* occupied that position; the risk he took was *necessarily taken* by somebody, and before the law all men are equal. It will be seen that the case at bar is much stronger for the defendants than the Welles case, since the public interest is strongest in respect to passenger trains; and passengers are not only unsolicited, but actually not allowed on cattle trains. It is obvious that Bissell was in no sense *a passenger;* but an attendant upon cattle. *A fortiori*, therefore, the *Welles* case is decisive of this, upon principle.

VI. The motion for a dismissal of the complaint should have been granted at the trial, for the *first* reason there given. The others have been considered. (*Shaw* v. *North Midland R. R. Co.*, 66 *Eng. Com. Law*, 347.) For the cause of action as shown by the proof, differed from that stated in the complaint, *in its entire scope and meaning.* (*Code, section* 171.) (1.) The contract declared upon was of a *passenger.* He was not a passenger. (2.) In a *passenger train.* It was not such

Bissell v. New York Central Rail Road Company.

a train, and the difference was essential.   (3.)  For a reasonable hire or reward.   He rode *free*, to take charge of the stock.  (4.)  The complaint stands on the *implied* contract growing out of the relation of common carriers of passengers.   But in fact the contract was express, special and in writing, and negatived the relation of passengers.   If a more bald and patent case of variance " in entire scope and meaning" was ever brought into court, we have never known of such ; and it must be remembered that all this was known to the plaintiff; and the inference is irresistible that the fictitious case brought into court was *deliberately preferred* to the true one.   Unless, therefore, this court is prepared to extend the liberal statutes relating to amendments, to cases where the plaintiff *intentionally avoids* stating the case as it is, the complaint should have been dismissed, as for a failure of proof.

VII.  The court erred in repeatedly declaring from the bench the opinion of the judge on the question of fact.

VIII.  The court erred in each of the refusals to charge the jury as requested by counsel for the defendants.

*C. Tucker*, for the plaintiff.   I.  The defendants cannot, by special contract, limit their liability for the consequences of negligence of the character established in this case.   By 2 *R. S.* 662, § 19, it is provided, " That every man who, by his culpable negligence, causes the death of another, although without intent to kill, is guilty of manslaughter."   There can be no doubt but that the agent of the defendants, whose culpable negligence caused the death of Bissell, is guilty of a felony, and would be answerable criminally under this statute.   It is equally clear, if the contract had been made with him personally, that it could not shield him from liability in a civil action.   (2 *Parsons on Cont.* § 12, *p.* 263, *and cases there cited.*) It has been held that in the case of carriers of property, such as live stock, the carrier cannot by contract limit his liability for the want of ordinary care.   (*Sager* v. *Portsmouth, &c. R. R. Co.,* 31 *Maine R.* 228 ; *S. C.* 1 *Am. Railway Cas.* 171.)

In that case the court say, " The very great danger to be anticipated by permitting them to enter into contracts to be exempt from losses occasioned by misconduct or negligence, can scarcely be over estimated. It would remove the principal safeguard for the preservation of life and property in such conveyances." This, like the case now before the court, was a corporation carrying on its business by agents only. The farthest any of the courts in this country have ever gone is, to permit common carriers to limit their extraordinary liability as insurers of the property intrusted to them. (*Dorr* v. *New Jersey Steam Navigation Co.*, 1 *Kern.* 485.) So rigidly has it been deemed necessary to hold carriers to the strictest liability, that until the decision of the case last cited it was doubted whether common carriers could limit by contract their extraordinary common law liability. (*Cole* v. *Goodwin*, 19 *Wend.* 251.) In this case it was declared to be well settled, " that a carrier could not, even by special agreement, exonerate himself from the consequences of gross neglect," and that still is the rule in this country, unless it may be said to have been overruled in the case of *Welles* v. *The New York Central Rail Road Company*, (26 *Barb.* 641.) In that case the judge who wrote the opinion held, that if the passenger had not been riding on a free ticket, the contract would not have shielded the company. In the present case, the passenger was not riding on a " free" or gratuitous ticket. It is not called a " free" ticket, as it was in the case last cited, and the presumption is that it was paid for. A gift is not to be presumed. Its very name, " *Cattle dealer's ticket,*" imports that a consideration had been paid for it. The employment of the defendants to carry their cattle is a sufficient consideration. It is a right that the drover acquires by the employment of the defendants to carry his cattle for hire ; at least this will be presumed, in case all other considerations were negatived. Why is it not called a " free ticket," like that in *Welles* v. *N. York Central R. R. Co. ?* Simply because it was not a free ticket. The clause near the bottom of the contract, " persons riding free

to take charge of the stock, do so at their own risk of personal injury, from whatever cause," does not prove that Bissell was riding free; and besides, it is a mere admonition to persons generally, without any reference to the parties to that agreement. It does not intimate that the ticket is a free ticket, or without consideration. It probably had reference to hired men, not named in the ticket or the contract. The true construction of this clause will not include injuries resulting from negligence. (*Sager* v. *Portsmouth, &c. R. R. Co., above cited.*)

II. The defendants are liable in a civil action, to the full extent, for all the damages caused by the negligence of the agent. (*Philadelphia and Reading R. R. Co.* v. *Derby,* 14 *How. U. S. Rep.* 486. *Steam Boat New World* v. *King,* 16 *id.* 469. *Thomas* v. *Winchester,* 2 *Seld.* 409.) In 14 *How. U. S. R.* 486, the court use the following language: "The rule of '*respondeat superior,*' or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent or deceitful." (*See also Story on Agency,* § 452; *Smith on Master and Servant,* 152.)

III. An agreement that the defendants shall not be liable for the negligence of agents, is in fact an agreement that the defendants shall not be liable for their own negligence; because they can only act through agents, and every agent is the corporation, while acting for it. These agents are the creatures of the defendants, and are selected by them; and one of the strongest inducements for the selection of capable and faithful agents, is the liability of the principal for the consequences of his conduct. It is as much against public policy that the principal should be excused from answering in damages for the conduct of his servant, in the management of steam power on a rail road, as it would be to exempt the principal in respect to his own acts.

JOHNSON, J. The jury have found, by their verdict, that the death of Bissell was occasioned by the gross negligence

of the agents of the defendants at the time of the collision. Being negligence of that character which resulted in the death of several human beings, it was criminal in its nature, and would have subjected the guilty agent to indictment and punishment under the statute. (2 *R. S.* 662, § 19.)

Neither the contract nor the ticket can be construed to refer to injuries from such a cause. It would be against the settled rules of construction to hold that injuries from criminal causes were intended by the parties. In *Welles* v. *The New York Central Rail Road Co.*, (26 *Barb.* 641,) it was conceded by the learned judge who delivered the opinion, that negligence so culpable as to imply fraud or bad faith would not be one of the risks assumed by the passenger, when, by accepting a free ticket or pass, he had expressly agreed to assume all risk of accidents, whether occasioned by negligence of the company's agents or otherwise. The injury here arising from a cause not within the risk, constitutes a good cause of action against the defendants. Whatever may be said in the books about degrees of negligence, they are clearly recognized by our statute, which makes culpable negligence by which a human being is killed, manslaughter in the fourth degree.

The remark of the judge in his charge to the jury, that it seemed to him a case of gross negligence, is no ground for an exception. The whole question was submitted to them. I do not find any error in the charge, or in the refusal to charge, and am of the opinion that the order refusing a new trial should be affirmed.

T. R. Strong, J. I concur in the result of the foregoing opinion; but I think there is no difference in principle between this case and the case of *Welles* v. *The same defendants*, (26 *Barb.* 641.) In the latter case, it was admitted by the parties, that the plaintiff took passage at Lyons for Albany on a passenger train of cars of the defendants; that while seated in the forward passenger car, a collision occurred between that train of cars and the cars of a freight or cattle train standing

on the same track of the defendants' road, whereby the baggage car of the passenger train was driven back into the car where the plaintiff was seated, and he was injured; and that such collision and injury were occasioned by carelessness and negligence of the defendants and their servants in charge of the respective trains.   This was all the evidence in the case in explanation of, or in regard to, the collision.   If the negligence thus proved was not a misdemeanor, for which an indictment would lie at common law, it was certainly as culpable as the negligence in the present case.   Fortunately, the consequences were not so serious; but that makes no difference as to the grade of the negligence.

There is no force in the idea suggested, that as the parties have not designated the degree of the negligence, the court must regard it as simple ordinary negligence; for, without reference to the admission, in terms, of negligence, the facts admitted, unexplained, show gross or culpable negligence. The defendants with one train of cars ran into another train of the defendants on the same track; and upon these naked facts the law would not presume there was a justification, excuse or palliating circumstance, not offered to be proved, but adjudges there was neither.

The principle of liability in this, was, in my opinion, equally applicable in the other case.

E. DARWIN SMITH, J.   In the conclusion to which my brother JOHNSON has come in this case, and in his reasons, in the main, I concur, but not in the view of my brother STRONG, that there is no distinction in principle between this case and that of *Welles* v. *The same defendants,* in 26 *Barb.* 641.

It seems to me that the verdict in this case can be sustained, and both decisions stand together.   It was not intended to deny, in the case of *Welles,* that there were not different degrees or shades of negligence, but to express a doubt whether those degrees could be defined with sufficient distinctness for any practical purpose.   But, however this may be, there is

obviously such a degree of negligence as in common and legal language is known and designated as *gross* or *culpable.* The legislature has called this degree of negligence, in sections 6, 13 and 19 of article 1, title 2, chapter 1, part 4 of the revised statute, (3 *R. S. 5th ed.*)—in defining manslaughter—*culpable negligence.* The 19th section is as follows : "Every other killing of a human being by the act, procurement or culpable' negligence of another, where such killing is not justifiable or excusable, or is not in said act declared murder or manslaughter in some other degree, shall be deemed manslaughter in the fourth degree." This degree of negligence, whether called *culpable* or *gross,* means the same thing—that want of care and regard to his duty which every man of common sense applies to himself and his own affairs or property, (*Edwards on Bailment,* 44; *Story on Bailment,* § 17,) or such neglect as is equivalent to *fraud,* or is evidence of fraud. (*Jones on Bailm.* 10, 46, 119.) From the consequences resulting from this degree of negligence, whether death ensue or not, no person can claim exemption by contract. (26 *Barb.* 645.) If the defendant was a natural person, and the negligence was his, as the jury have found this to be a case of gross negligence, nothing further need be said in support of their verdict. But the defendant is a corporation aggregate, and could not be guilty of manslaughter or any other crime. As it has no *soul,* it can incur no moral guilt. It acts, necessarily, through officers and other agents. This fact, obviously, should not confer upon it any degree of irresponsibility in the affairs of business which would not apply to natural persons. Its agents must necessarily be liable criminally, like all other natural persons, and civilly for willful wrongs. The case of *Welles* was put upon the *distinction* between the negligence of the *principal* and the negligence of his *agents* and *servants.*

The defendants are common carriers of persons and property. A common carrier is one who undertakes for *hire* or *reward* to transport the persons or goods of such as choose to

employ him, from place to place. (*Story on Bailm.* § 495. *Edwards on Bailm.* 425, 584.) As the obligation which the carrier assumes rests upon the basis of contract, express or implied, it would seem that, in point of principle, he must possess the same right with other persons to make his own contracts. But this right is clearly subject to some restriction. The carrier is deemed to exercise a quasi public employment; and for this reason, and in this respect, it has long been held that public policy requires some limitation upon this absolute right. The defendants are a rail road corporation, and exercise a public franchise, and as such are doubtless subject to legislative control and restriction in regard to the manner of doing their business, and in regard to the character and extent of their undertakings and obligations with individuals. But as common carriers, independently of particular legislation, they stand upon the same common law footing with natural persons, and the measure of their responsibility is precisely the same. Civilly, the defendants, as common carriers of persons for hire or reward, are liable for all injuries resulting from the negligence, carelessness or unskillfulness of their servants and agents, (16 *N. Y. R.* 362; *Story,* § 400,) and from all such acts of negligence for which, if they were natural persons, they would be liable criminally. They clearly cannot exempt themselves from civil responsibility by contract. Precisely the same obligation rests upon them, and the same restriction upon their right to limit their responsibility by contract exists, as would apply to a natural person in their place.

When rail road or other corporations assume the duty and employment of common carriers, as in this case, and act entirely by officers and agents, as they necessarily must, I conceive that they cannot contract for exemption from responsibility for whatever pertains to the *proprietorship* of the rail road, nor for the acts of that class of superior agents who act for and in the place of the corporation, as officers, directors or other managing agents, and who, as such, within the trust

confided to them, control and direct the operations of the corporation, and employ its inferior servants and agents. If a single natural person, for instance, owned the defendants' rail road and its property, and operated the same for his own benefit, he would be bound to employ and provide skillful, careful, sober and proper persons as engineers, conductors, brakemen, switch tenders, and in all other positions, and would be bound to see to it that the tracks of his rail road, its bridges, turn-outs, and all other portions of his road, and the locomotives and cars in use thereon, and all the appurtenances of the road, were in a safe and proper condition. He could not stipulate for immunity from injuries resulting from negligence in respect to any such particulars, no more than he could for bad faith or fraud. All contracts exempting him, or seeking to exempt him, from responsibility for his personal negligence or fraud, would be repugnant to public policy, and absolutely void. (*Alexander* v. *Greene*, 3 *Hill*, 20. *Story on Bailm.* 21.) And the same rule, I think, should be applied to corporations. Public policy forbids the making by them of any contract that shall exempt them from responsibility, that would not be allowed to a natural person exercising the same precise employment. A private person, operating this rail road as his own, might stipulate, by express contract, I think, that a person who should ride free over his road should take the risk of the negligence of his subordinate agents and servants in running his trains; provided that he himself was free from all negligence in their employment, direction or otherwise. No one has a right to require a common carrier to transport him or his property without charge and at his own risk. And I can conceive no legal objection to a contract fairly and distinctly made, between a common carrier and a passenger who pays no fare, that the latter shall take his own risk in respect to the negligence of subordinate agents or servants in their appropriate sphere. And this is all we meant to decide in the case of *Welles.* No man who pays his fare

will be likely to make such a contract, or voluntarily to relinquish any safeguard for his personal security.

In this case the plaintiff's husband made and signed with his own hand an express contract, in which it is stipulated that the persons riding free on the defendants' road, to take charge of stock, do so at their own risk of personal injury, from whatever cause. And he also received from the defendants' agents, at the same time, a ticket with an indorsement thereon, stating that the person receiving the same assumed all the risk of accidents, and expressly agreed that the company should not be liable under any circumstances, whether of negligence or otherwise, for any injury to the person, &c. In such a case I conceive that there is no liability on the part of the defendants, except such as would exist between two private persons when one undertook to carry the other gratuitously from one place to another, for the personal accommodation or pleasure of the latter. The defendants would not be subject to the responsibilities of common carriers, but would be liable simply as *bailees*, as in the case of a naked depositary without reward, or a mandatary, who are only responsible for *gross* or *culpable neglect*. (16 *N. Y. R.* 447. 11 *Wend.* 25. 17 *Mass. Rep.* 479. 7 *Cowen*, 278.)

In this view of the defendants' responsibility, in either aspect of the case, I find no difficulty in sustaining the verdict. The jury have found that the case was one of gross negligence, and this gross negligence was the negligence of the principal, in the employment of the very careless, incompetent and stupid, if not drunken, switchman, whose heedlessness caused the collision of the trains which produced the death of the plaintiff's husband. Such, doubtless, was or may have been the opinion of the jury and the grounds of their verdict. On these grounds I think it entirely correct and proper.

In the case of *Welles* v. *The same defendants*, (*supra*,) there was no such proof, and no evidence showing how the collision happened; nor any evidence that would warrant a

jury in finding that any particular person, agent or servant, whose negligence caused the injury, was unfit for his place, or that any negligence had been committed by the defendants in their scheme or direction for the running of the trains, or in the employment of any of their agents or servants. It was stipulated in the case, by the attorneys, that the injuries were occasioned by the carelessness and negligence of the servants and agents of the defendants in charge of the two trains at the time of the collision. The express agreement of Welles, in that case, extended to, and was obviously designed to cover and embrace, the risks which would attend, and the casualties which might result from, the negligence of just this class of subordinate servants and agents, and where there was no fault or negligence on the part of the defendants, as *proprietors of the rail road*, in providing, to the utmost extent of care and diligence on their part, to prevent such casualty.

Upon this discrimination between the acts of the principal and the agent, I think that the case of *Welles* was rightly decided; although some expressions in the opinion may require qualification. And that the verdict in this case can be sustained without involving any inconsistency between the two cases. I concur, therefore, in the decision that a new trial be denied.

Order refusing a new trial affirmed.

[MONROE GENERAL TERM, September 5, 1859. *T. R. Strong, Smith* and *Johnson*, Justices.]