Grimke, J.
A receipt may be defined to be such a written acknowledgment, by one person, of his having received money from another, as will be prima facie evidence of that fact in a court of law; and the real difficulty in the present case grows out of the fact that the name of the person purporting to have received the money is not placed at the bottom of the indorsement; from which it might be argued, generally, that a writing on the back of a note is not the subject of forgery; or, at any rate, that until signed it is an incomplete instrument, the alteration of which will not be a crime. And this will depend upon the fact, whether the indorsement can be considered as a mere private memorandum, or whether it is not such an acknowledgment of the receipt of the money as would preclude the payee of the note from disputing it. It is unnecessary to say what would be the effect of an indorsement which should be made by the payee without the privity and knowledge of the maker ; for here it is proved to have been made by the maker in the presence, with the concurrence, and by the direction of the payee, which relieves the case of a great deal of difficulty, since it resembles the indorsement to a binding contract between the parties rather than a private memorandum made by one of them. And this, among other reasons, may account for the fact that the signature of the payee is not affixed. The meaning and force of the instrument might, to both of them, seem to be sufficiently denoted without the performance of that ceremony.
But the nature and form of a receipt will almost always depend upon the mode in which the business to which it has reference is transacted. If a note is not present at the time when a payment is made, a receipt may, notwithstanding, be given; but it will, from the necessity of the case, be upon a separate piece of paper, and it will then invariably have the ^signature of the payee. [80-The payee may, also, afterward make a memorandum of that fact, for his own convenience, upon the back of the note, of which the maker may have no knowledge. This memorandum may or may not have his name subscribed to it, and it is unnecessary to say what would be the effect of an alteration in such a case. If the *81 note is present at the time, and the indorsement is then made, it is not usual for the payee to place his signature to it; because the place where it is found, the note itself, indicates with equal, if not more precision and certainty, the fact intended to be commemorated, and identifies, beyond doubt, the person by whom and the intention with which it was maur.'. There are certainly exceptions to the rule, depending more upon the extreme scrupulousness and caution of one or other of the parties than upon any evident necessity. So, also, although an indorsement of a partial payment may be made, with or without signature, the maker will sometimes require a separate receipt also, not because he supposes it to be of more binding force, but because the note remaining in the hands of the payee, the indorsement might be subject to alteration. It is.like the case of a contract between two parties, where each chooses to have a copy in his possession, not because one is not as obligatory as two such instruments; but because one may be lost or interlined. Each has an interest in the contract, which is better protected if two instruments instead of one only are executed. If the parties could be sure that there would be no danger of loss or alteration, there would be no thought of having two instruments executed.
Where an instrument is intended to be delivered by the party making it to another person, the subscription of his name will be considered as almost absolutely necessary ; but where the nature of the transaction is such as not to imply a delivery, no such necessity will suggest itsélf. It is for this reason that an indorsement on a note of a partial payment so seldom has the name of the payee affixed to it; he could not deliver the indorsement without giving up the note, and it is necessary for him to retain 81] the last until a full payment has been *made. Such is the difference which the modes of doing business among men makes in the form of their transactions; but this difference.of form ought not to mislead the mind, it should rather be taken as an indication that the substance may remain, although the form may vary.
The case of The King v. Harvey, Crown Cases, Russ. & Ry. 227, is one of the very few to be found which has any analogy to the present. The prisoner was tried upon an indictment stating that William Chinnery was indebted to Thomas Thompson, and that the prisoner forged a receipt and acquittance. The prisoner was convicted, but a doubt arose whether the instrument charged tó *82 be forged, could be . considered as a receipt. It was in the following terms: “¥m. Chiftnery, Esq., paid to X Thomson the som of 8 pounds, feb. 1812.” It was not subscribed, by Thomas Thompson. At a meeting of the judges, this conviction was held wrong, because the writing was not a receipt; it was only an assertion that Chinnery had paid the money, but did not import an acknowledgment thereof. It is evident, from the statement of the case, that the writing was upon a separate piece of paper. No note or other instrument is alluded to as evidencing,the original indebtedness. The circumstances of the case, indeed, forbid any such supposition being made. The alleged forgery consisted in making a writing which purported to be a receipt of money, whereas, in the present instance, the forgery consists in the erasure of a writing of the same import. The defendant in the one case was the'debtor, and in the other the creditor. If, in the first case, the alleged forgery was upon an instrument which is not supposed to be in the possession of the party committing it, the fact that such instrument existed, could not fail to have been stated. There may, therefore, have been good reason for holding that the writing contained only an assertion and not an acknowledgment of a payment. Mr. Archbold, however, remarks (Arch. Cr. Pl. 304), that the statute under which the conviction was had, did not contain the words “ accountable receipt,” thereby implying that if it had, the construction given to those words■ might *have [82 resulted in a different determination. Our statute, which is copied from another of the English statutes, does contain those words, but as the indictment is not framed to meet them, it is unnecessary to notice the distinction. If those words do contain a more comprehensive meaning than the words acquittance or receipt, I am not able to see it, although I am not prepared to say that they may not. Nothing is more common in the statutes than to set down every species of word which may by possibility denote every shade of offense, and afterward to rack one’s ingenuity in finding a meaning for them. This adds to, but does not diminish, the uncertainty of the law.
The King v. Barton, Crown Cases, 1 Moody, 141, is another ease growing out of the construction given to the term receipt. The indictment stated that a precept had been issued by a constable to the overseers of the poor to collect £21 11s. 4d.; that a receipt for that sum had been forged by falsely affixing and cementing to the *83 precept, at the foot thereof., the following receijit; “ 1825 Reed. H. H.” It was held that the convictioti was wrong: that inasmuch as the receipt was signed with initials only, the indictment should have contained some averment explaining what those initials meant. It was not considered a sufficient objection' that the receipt was not subscribed in the name of the person purporting to have made it, but only that inasmuch as it was subscribed by two letters of the alphabet, and the indictment showed that fact, that it was necessary also that it should show what was the meaning of those letters. Neither of these cases contradict the idea that the indorsement in this case is a receipt. The great difficulty which existed in Harvey’s case does not exist in this; there the writing was made by the debtor, here the erasure is of a writing made by the joint act of both parties. There is a privity between them, which contradicts the idea that the indorsement was a mere assertion. It is made under circumstances which supersede the necessity of a signature. Barton’s case more than countenances the idea, although it is not directly decided that the signature of the name was not necessary. It carries that irresistible implica88] tion along with it. On *the whole, I am satisfied that the indorsement in this instance was a receipt, the erasure of which is forgery.
Judgment affirmed.