# Wheeling,

## MASLIN *v.* B. & O. R. R. Co.

### Decided November 16, 1878.

1. A railroad company is a common carrier of cattle, but as such is not responsible for losses occasioned by the cattle dying, or being injured by heat, unless the loss or damage has been occasioned by some negligence or misfeasance of the company or of its servants.

2. A common carrier *for hire* by special contract, based on a valuable consideration, may exempt itself from loss, or damage, resulting from inevitable accident, though such accident was not the result of the act of God, or of the public enemy, provided the common carrier, or its servants, in no manner contributed to such accident; but it can not exempt itself from loss or damage, which has in any degree been caused by the negligence or misfeasance of itself or its servants.

3. A railroad company, which charges for the transportation of cattle, but permits the shipper to travel on a free pass upon the cars to take care of the cattle, is a common carrier *for hire*, both as to passenger and cattle.

4. A common carrier does not become a private carrier, by a special contract, whereby it is relieved from a portion of its responsibilities as a common carrier.

5. A shipper of cattle in a declaration in which there are no counts against the defendant except against him as a carrier, or bailee, of cattle, can not recover for losses resulting from the misrepresentation of the defendant's agent, whereby the plaintiff was induced to ship the cattle on a slow train of the defendant, instead of on a fast train.

*Supersedeas* to a judgment of the circuit court of Mineral county, rendered on the 18th day of May, 1876, in

*1878*
*Special Term.*

an action therein pending, in which Thomas Maslin was plaintiff and the Baltimore and Ohio Railroad Company was defendant, allowed on the petition of the defendant.

Hon. John Blair Hoge, judge of the third judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case :

In February, 1870, Thomas Maslin brought an action of trespass on the case against the Baltimore and Ohio Railroad Co., in the circuit court of Mineral county. The declaration contained three counts. The first set forth, that the defendant was a common carrier of goods, cattle, &c., from New Creek in Mineral county, West Virginia, to Baltimore, Maryland ; and while such common carrier, the plaintiff on August 16, 1869, caused to be delivered to it at New Creek station, in said county, and it then received, 36 head of fat cattle ready for market, in good condition and of the value of $3,000.00, to be safely and securely carried and conveyed to Baltimore and there delivered in good condition to H. Seymour & Co. for certain reasonable reward. Yet the defendant did not safely carry the cattle, nor deliver them, but through its carelessness, negligence and misconduct two of them died on the cars, and the rest were seriously injured and damaged.

The second count contains similar allegations, but does not allege, that the defendant was a common carrier, and specifies the defendant's carelessness and misconduct to have been the refusal of the defendant's agent, when requested so to do, to drop the cars, on which the cattle were, at Martinsburg, or to throw water on them there or at Ellicott's Mills, though they were suffering greatly from heat and two of them had fallen down in the cars, and though the defendant by its agent could easily have complied with the request.

The third count is against the defendant as bailee of

the cattle. It does not specify any carelessness or misconduct of the defendant, but simply states, that it did not take due and proper care of the cattle, as such bailee.

Afterwards by leave of the court two additional counts were added to this declaration. The first of which was like the first count, except that it alleges, that the defendant required the plaintiff's agent to execute and deliver a paper, whereby the defendant restricted its general liability, as common carrier of said cattle and insisted therein, that they were to be conveyed at the owner's risk in certain respects ; and that with these restrictions it became bound and undertook to convey said cattle to Baltimore, using such ordinary care, diligence, precaution, and prudence, as a man would use in care of his own cattle, which it did not do, but by its wilful neglect and misconduct and its, refusal to permit water to be thrown on the cattle, when requested by plaintiff's agent, though they were suffering and about to perish from heat, whereby two of the cattle died on the cars, and the others were seriously injured.

The last count was similar to the preceding, except that it set out the special contract at length. This special contract sets out, that in consideration of a reduced rate of charges the plaintiff assumed certain specified risks, that is all and every risk of injuries, which the animals, or any of them, might receive in consequence of any of them being wild, vicious, unruly, weak, escaping, maiming or killing themselves, or each other, or from delays, or in consequence of heat, suffocation, or the ill effects of being crowded on the cars, or on account of being injured by the burning of hay or straw or other material used by the owner for feeding them or otherwise, and for any damage occasioned thereby ; and also all risk of any loss sustained by reason of any delay or for other causes or things in, or incident to, or from, or in loading or unloading, the cattle. And by said special contract the plaintiff agreed to load and unload the cattle at his own risk, the defendant to furnish the necessary power

1878·
Special Term.

Maslin
v.
B. & O. R. R. Co.

to move the cars under the plaintiff's direction, who was to examine for himself and see, that they were of sufficient strength, of the right kind and in good repair. And it was further agreed, that under no circumstances should the defendant be responsible for injury to, or loss of, any single animal beyond $200.00, though its value might be more. And the plaintiff or his agent was to have a free passage on the cars to take care and charge of the cattle, but at his own risk of personal injury from any cause. And the plaintiff released the defendant from all responsibility for losses, before referred to, or from any other, that might happen from mistakes or unavoidable accidents in the transportation of the cattle.

The defendant demurred to this declaration including these two additional counts, and to each of the counts; and the court overruled the demurrer, and the defendant pleaded not guilty; and issue was joined. The jury found a verdict for the plaintiff for $342.50; and thereupon on May 18, 1876, the court rendered judgment therefor pursuant to the verdict. The defendant filed a bill of exceptions, which was made a part of the record, which states, that evidence was introduced tending to prove, that the defendant was a common carrier, and that the special contract set forth in the declaration was executed; that the transportation charges were $124.00, that at the maximum rate of eight cents per ton per mile the transportation charges would have been $225.00; that the cattle were shipped on the afternoon of August 16, 1869, and reached Baltimore the next afternoon; that the weather was excessively hot for the season, that the cattle were placed by the plaintiff in two cars and accompanied by his agent, that en route two cattle died and others were injured from the effects of heat; that (as attempted to be proven by the plaintiff, but objected to by the defendant,) prior to the time the cattle were shipped the plaintiff requested the defendant's agent at New Creek to furnish cars to ship the cattle on a regular stock train, which was to have left, and did leave, that place in the forenoon of

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

August 16, 1869, and that the agent was unable to furnish them for that train, and for that reason they were shipped in the afternoon train on what was called the slow stock train consisting of twenty-one cars of dead freight and these two cars of cattle; that before the cattle were shipped the defendant's agent represented to the plaintiff that the cattle would be as safely and advantageously carried on this slow stock train as on the regular cattle train, which representation was not true ; and there was also evidence tending to show, that the cattle died and were destroyed by the negligence of the defendant's servants. After the evidence was introduced tending to prove these facts, and before the jury retired, at the instance of the plaintiff the court gave these instructions :

"No. 1. The court instructs the jury, that the defendant in this cause could not lawfully stipulate by special contract or otherwise for exemption from responsibility for the negligence of itself or its servants.

"No. 2. The court instructs the jury, that although they may believe from the evidence, that the paper writing dated August 16, 1869, entitled 'stock contract' was fairly executed, yet if they believe from the evidence, that the said cattle in their transportation by the defendant from New Creek to Baltimore sustained loss and injury, and that said loss and injury resulted from the negligence of the defendant or its servants, then they must find for the plaintiff.

To the giving of which the defendant objected, and asked the court to give to the jury the six instructions as follows :

"No. 1. The court instructs the jury, that if they believe from the evidence, that the plaintiff put his cattle upon the slow stock train of the defendant to be carried upon it to Baltimore, and paid the hire therefor there, then the plaintiff cannot under the pleadings in this cause recover any damages because of any failure of the company to furnish cars for the shipment of said cattle at an earlier or different time upon the request of the plaintiff.

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

"No. 2. If the jury believe from the evidence, that the cattle mentioned in the declaration were received and taken by the defendant at New Creek to be carried and delivered to H. C. Seymour & Co., at Baltimore, by virtue of and upon the terms and stipulations of the contract of shipment of the 16th of August, 1869, then the defendant was not liable as a common carrier for the safe and careful carriage and delivery of the same.

"No. 3. If the jury believe from the evidence that the 36 head of cattle mentioned and described in the declaration, and delivered by the plaintiff to the defendant at New Creek, to be transported to Baltimore, were so delivered by the plaintiff and so received by the defendant to be transported upon the stipulations, conditions and understandings expressed in the agreement in writing between the plaintiff and defendant, dated the 16th day of August, 1869, and if the jury further believe, that the plaintiff suffered no other damage from the undertaking of the defendant in relation to the said cattle than what resulted from heat of the weather, then they must find for the defendant.

"No. 4. If the jury believe from the evidence, that the cattle mentioned in the declaration were taken and received by the defendant at New Creek, to be carried and delivered to H. C. Seymour & Co., at Baltimore, Maryland, upon the terms and stipulations of the contract of the 16th of August, 1869, the defendant was not liable to the plaintiff for loss and injury to the said cattle which resulted from heat.

"No. 5. The defendant under and by virtue of the laws of this State, at the time the said cattle were shipped, was entitled to, and might have claimed and demanded of the plaintiff, for the tolls and charges for the transportation of said cattle, in the absence of any agreement to the contrary, the rate of eight cents per ton per mile.

"No. 6. In this case the jury cannot consider, on the question of the liability of the defendant, the fact that

1878
Special Term.

Maslin

v.
B. & O. R. R. Co.
the cattle were not shipped on a different train, or were shipped on the train on which they were carried."

But the court refused to give these instructions, but gave them as thus modified:

"No. 1. The court instructs the jury, that if they believe from the evidence, that the plaintiff put his cattle upon the slow stock train of the defendant, to be carried upon it to Baltimore, and paid the hire therefor there, then the plaintiff cannot under the pleadings in this cause recover any damages because of any failures of the company to furnish cars for the shipment of said cattle at an earlier or different time, upon the request of plaintiff, unless they further believe from the evidence, that the plaintiff was induced to put his cattle on said 'slow stock train,' because of representations made to him by the defendant's agents, that transportation on said 'slow stock train' would be as safe and advantageous as transportation on regular 'stock train,' and that said representations were not true.

"No. 2. If the jury believe from the evidence, that the cattle mentioned in the declaration were received and taken by the defendant at New Creek, to be carried and delivered to H. C. Seymour & Co., at Baltimore, by virtue of and upon the terms and stipulations of the contract of shipment of the 16th of August, 1869, then the defendant was · not liable as a common carrier for the safe and careful carriage and delivery of the same, so far as such liability was modified by any special contract limiting the same.

"No. 3. If the jury believe from the evidence, that the thirty-six head of cattle mentioned and described in the declaration, and delivered by the plaintiff to the defendant at New Creek, to be transported to Baltimore, were so delivered by the plaintiff, and so received by the defendant, to be transported upon the stipulations, conditions and understandings expressed in the agreement in writing between the plaintiff and defendant, dated the 16th day of August, 1869, and if the jury

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

further believe, that the plaintiff suffered no other damage from the undertaking of the defendant in relation to the said cattle than what resulted from heat of the weather, then they must find for the defendant, unless they further find that such injury might have been prevented by the exercise by defendant's servants of such care and diligence as was practicable under the circumstances.

"No. 4. If the jury believe from the evidence, that the cattle mentioned in the declaration were taken and received by the defendant at New Creek, to be carried and delivered to H. C. Seymour & Co., at Baltimore, Maryland, upon the terms and stipulations of the contract of the 16th of August, 1869, the defendant was not liable to the plaintiff for loss and injury to the said cattle which resulted from heat, unless they should further find, that defendant or its servants were guilty of negligence in not employing such means to alleviate such consequences as were reasonable and practicable under the circumstances."

Thereupon the defendant excepted to the judgment of the court in overruling its objection to the instructions prayed for by the plaintiff and giving them to the jury, and also to the judgment of the court in sustaining the objection of the plaintiff to the said instructions asked for by the defendant, and refusing to give them, or either of them, and also excepted to the giving of the others by the court in lieu of those asked for by the defendant, and prayed that this its bill of several exceptions be signed, sealed and made a part of the record of this cause, which is accordingly done.

To the judgment of the court rendered on May 18, 1876, a writ of error and *supersedeas* has been granted on the petition of the defendant.

*C. Boggess and Baylor & Wilson* for plaintiff in error, relied on the following authorities:

1 W. Va. 87; 3 W. Va. 556; 21 Mich. 165; 4 Am.

1878
Special Term.

Maslin
v.
B, \ O. R. R. Co

R. 466 ; 34 Md. 197 ; 10 Am. R. 355 ; *Id.* 559 ; 12 Md. 275.

*W. H. H. Flick,* for defendant in error.

GREEN, PRESIDENT, delivered the opinion of the Court :

The enquiries presented to our consideration by the record in this case are : First, whether a railroad company is a common carrier of cattle ; and if so, what are its duties and responsibilities as such ? Second, can these duties and responsibilities be modified by special contract ; and if so, to what extent ?

At common law a common carrier is one, who undertakes for hire to carry from place to place the goods of all persons indifferently. *Gisbourn* v. *Hurst,* 1 Salk. 249 ; *Hale* v. *The New Jersey Steam Navigation Company,* 15 Conn. 539 ; *Elliott* v. *Rossell,* 10 Johns. 1 ; *Dwight* v. *Brewster,* 1 Pick. 50 ; *Orange Bank* v. *Brown,* 3 Wend. 161 ; *Allen* v. *Sackrider,* 37 N. Y. 341. Railroad companies are obviously within the terms of this definition and unquestionably common carriers, they being bound to carry from place to place the goods of all persons indifferently for hire. See *Parker* v. *The Great Western Railway,* 7 Man. & G. 253 ; *Muschamp* v. *Lancaster Railway,* 8 M. & W. 421. And railroad companies being under the same obligation to carry for hire from place to place cattle, as well as other goods, of all persons indifferently, must be held to be common carriers of cattle.

It has been said, that common carriers of cattle were unknown to the common law originally ; but so were common carriers of pianos, and many other things transported now constantly by common carriers. At common law the character of common carriers was not determined by the kind of property they carried. At common law a man might become a common carrier of just such kinds of property as he chose. He was a common carrier of such kinds of property as he publicly undertook as a business to convey for all persons indifferently for hire.

Railroad companies are chartered and organized to transport all sorts of personal property, including cattle, and therefore hold themselves out as common carriers of all sorts of property, including cattle, by an act irrevocable on their part in their very creation and organization. See *Kansas & Pacific Railroad Company* v. *Nichols*, 9 Kansas 235 (15 Am. R. 494). It is true that in Michigan a railroad company has been held not to be a common carrier of cattle. See *Lake Shore & Michigan Southern Railroad Co.* v. *Perkins*, 25 Mich. 329 (12 Am. R. 275), and the same position received some countenance from the case of *The Louisville, Cincinnati & Lexington Railroad Co.* v. *Hedger*, 9 Bush 645 (15 Am. R. 740). But these views have not been generally approved; and the overwhelming weight of authority establishes the position, that railroad companies are common carriers of cattle. See *South & North Alabama Railroad Co.* v. *Henlein*, 52 Ala. 606, (23 Am. R. 578); *Clarke* v. *The Rochester & Syracuse Railroad Co.*, 14 N. Y. 571; *Smith* v. *The New Haven & North Hampton Railroad Co.*, 12 Allen 531; *McDaniel* v. *The Chicago & Northwestern Railroad Co.*, 24 Iowa 412; *Bankard* v. *The Baltimore & Ohio Railroad Co.*, 34 Md. 197; *Virginia & Tennessee Railroad Co.* v. *Sayers*, 26 Gratt. 328; *Roderick* v. *The Railroad Co.*, 7 W. Va. 54.

At common law a common carrier was liable for all damage or loss of goods during the carriage from whatever cause arising, unless such damage or loss arose from act of God or from the public enemy, except when the loss arises from the nature and inherent character of the property carried, such as the natural decay of perishable articles, or the fermentation or evaporation of the articles liable to these effects, or the natural and necessary wear of certain articles, or from defects in the vessels or packages in which they were put, or, in the case of cattle, when the loss arises from their own vitality, as where vicious and unruly animals injure or destroy themselves or each other, or starve themselves from refusing food,

or die of fright or heat, and provided the common carrier has used foresight, diligence and care to avoid such damage and loss. It is probable, that the unwillingness of some courts to declare railroad companies common carriers has arisen from not sufficiently considering the general character of this last exception, and concluding that if held to be common carriers of cattle, they would be responsible for inevitable casualties arising from the vitality of the cattle. But from these they would as common carriers be exempt by the general principles of the common law. See *Smith* v. *New Haven & North Hampton Railroad Co.,* 12 Allen R. 533.

It is well established, that a railroad company is not responsible, where an accident arises from the viciousness or temper of the animal transported or from the natural propensity of the animals, if the agents of the railroad company have used foresight, diligence and care to prevent such loss or damage. See *Clarke* v. *Rochester & Syracuse Railroad Co.,* 14 N. Y. (4 Kernan) 571 ; *Cragin* v. *New York Central Railroad Co.,* 51 N. Y. 61 ; *Conger* v. *Hudson River Railroad Co.,* 6 Duer 375 ; *Hall & Co.* v. *Renfro,* 3 Metc. (Ky.) 53.

As the duties and responsibilities of common carriers were prescribed by public policy, it has been seriously doubted, whether the courts did wisely in allowing that policy to be departed from without legislative interference, by which any needed modification could have been introduced into the law ; but the courts have relaxed the common law rule to the extent of authorizing certain exemptions from liability on the part of common carriers for hire by special contract; and the danger is, that these exemptions by special contract may be carried beyond legitimate limits and introduce evils, against which it was the express policy of the law to provide. See *Railroad Co.* v. *Lockwood,* 17 Wall. 357.

The courts have generally permitted common carriers for hire by special contracts based on valuable considerations to exempt themselves from losses or damages re-

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

sulting from inevitable accident, though such accident was not the result of the act of God or of the public enemy, provided the negligence of the common carrier in no manner contributed to such accident; but have refused to permit the common carrier for hire by special contract, though based on consideration, to exempt himself from loss or damage, which had in any degree been caused by his own negligence or that of his servants.

It seems to me highly unreasonable, that a common carrier for hire should in any case be permitted by special contract to exempt himself from responsibility from losses arising from his own negligence. And it is no less unreasonable to permit him by special contract to exempt himself from losses, which result from the carelessness or negligence of his servants. For the main object of the common law in making common carriers insurers was to secure the most exact diligence and fidelity on the part of the servants of the common carrier. As corporations can only act though their servants, to hold, that as common carriers they may by special contract exempt themselves from all liability for losses arising from the negligence of their servants, is really to hold, that they may exempt themselves from all liability as common carriers. And as a very large portion of the transportation of the world is now carried on by railroad companies as common carriers, and as they almost always in the transportation between different places have practically a monopoly of the business, so that if they insist that such special contracts be made, the passenger or shipper has practically no choice but to submit to entering into such special contracts, or to forego his journey or the sending off of his freight, the result would be practically the abolition of the whole law of common carriers, and all corporations would become substantially private carriers on their own terms instead of common carriers as designed by their charters. Indeed they would not have placed on them even the responsibilities of private carriers; for neither they nor any other party

ought to be permitted by special contract to avoid the responsibility of answering for losses, the direct result of their own carelessness or negligence.

Judge Redfield in his work on Carriers and other Bailees, well says, §156: "There is something very incongruous and not a little revolting to the common sense, that a bailee for hire should be allowed to stipulate for exemption from the consequences of his own negligence ordinary or extraordinary. A laborer, domestic, or mechanic, who should propose such a stipulation, would be regarded as altogether unworthy of confidence in any respect; and the employer, who would submit to such a condition, must be reduced to extreme necessity, one would suppose."

Since the courts have determined, that common carriers for hire may by special contract based on valuable consideration, exempt themselves from some liabilities imposed on them by the common law, till the Legislature determines by statute law, what these liabilities are, from which they may so exempt themselves, the courts must determine thereon. And all that can now be laid down is, that such exemptions must be just and reasonable; that exemption from responsibility arising from losses occasioned in any degree by the negligence of the common carrier or his servants are not just and reasonable, but exemption when specially stipulated for, from losses arising from inevitable accidents unaccompanied by any negligence, though not caused by the act of God or the public enemy, are reasonable and just. What other exemptions, if any, when so stipulated for should be held reasonable and just, must be hereafter determined as the cases arise presenting the question to the courts for their determination.

When a common carrier transports a passenger or freight free of charge, the exemptions, for which he may justly and reasonably stipulate, may be perhaps greater, than when he transports for hire. It is unnecessary however to consider this question in this case, as the

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

common carrier in this case transported for hire. It is true, the agent of the plaintiff was permitted for the purpose of taking care of the cattle on the train to travel on the cars on a free pass, but as pay was taken for the transportation of the cattle, and the contract for the transportation of this agent and the cattle must be regarded as one contract, this contract was for tranportation for hire, and this agent as well as the cattle must be held as transported for hire. See *Cleveland Railroad Co. v. Curran*, 19 Ohio St. 1, 12, 13; *Pennsylvania Railroad Co. v. Henderson*, 51 Penn. St. 315; *Railroad Co. v. Lockwood*, 17 Wall. 384; *Virginia and Tennessee Railroad Co. v. Sayers*, 26 Gratt. 328.

The views above expressed are substantially those held by the Supreme Court of the United States in the case of *Railroad Co. v. Lockwood*, decided in 1873; and they are sustained by the weight of authorities. The old English authorities held special stipulations against liability for negligence or misconduct illegal and void. Thus in the Doctor and Student, Dialogue 2028, speaking of a common carrier it is said: "If he would refuse to carry articles delivered for carriage, unless promise were made unto him, that he shall not be charged for misdemeanor that should be in him, the promise was void, for it was against reason and against good manners, and so it is in all other cases like," and this passage is quoted by Noy in his maxims at law. Noy's Maxims 92. Stevens in his commentaries vol. 2, p. 135, states, that a common carrier's liability might by special contract be varied, but the law would still hold him responsible for negligence and misconduct.

This remained the law in England as late as the year 1832. Mr. Justice Blackburn in the case of *Peck v. North Staffordshire Railway Co.*, 10 House of Lords Cases, page 494, states, that common carriers could not by the English law as formerly established by the weight of authority, by any special agreement exempt themselves from all responsibility, so as to evade alto-

gether the salutary policy of the law. They could not by a special notice exempt themselves from all responsibility in cases of gross negligence and fraud, or by demanding an exhorbitant price compel the owner of goods to yield to unjust and oppressive limitations of his rights. And the carrier would be equally liable in case of the fraud or misconduct of his servants, as he would be in case of his own personal fraud or misconduct. But, as stated by Justice Blackburn, after that time it was held, that a carrier might by a special notice make a contract limiting his responsibility even in the case of gross negligence, misconduct or fraud on the part of his servants. The cases from which Justice Blackburn deduces this conclusion, that this was substantially the holding of the English courts subsequently to 1832, are: *Wyld* v. *Pickford*, 8 M. & W. 443; *Hunter* v. *Dibbin*, 2 Q. B. 646 (46 E. C. L. 847) *Shaw* v. *York and North Midland Railway Co.*, 13 B. & B. 347; *Austin* v. *Manchester, Sheffield and Lincolnshire Railway Co.*, 16 Q. B. 600; *Chippendale* v. *Lancashire and York River Railway Co.*, 21 Law J. (N. S.) Q. B. 22; *Austin* v. *The Manchester, Sheffield and Lincolnshire Railway Co.*, 10 C. B. 454; *Carr* v. *Lancashire and Yorkshire Railway Co.*, 7 Exch. Rep. 707; *The Great Northern Railway Co.* v. *Morville*, 21 Law J. (N. S.) Q. B. 319; *The York, Newcastle and Berwick Railway Co.* v. *Crisp*, 14 C. B. 527; *Hughes* v. *The Great Western Co.*, 14 C. B. 637; *Slim* v. *Great Northern Railway Company*, 14 C. B. 647.

In the case of *Carr* v. *Lancashire and Yorkshire Railway Company*, 7 Exch. Rep. 707, the defendant had received a horse to be carried for him in a horse box, subject to conditions at the foot of a ticket for the conveyance of a horse, in these words: "This ticket is issued subject to the owner's undertaking all risks of conveyance whatsoever, as the company will not be responsible for any injury or damage (however caused) occurring to live stock of any description traveling upon the Lancashire and Yorkshire Railway Company, or in their vehicles." The horse was killed, as the jury found, by the gross neg-

ligence of the defendant. Yet the court held, that the plaintiff was not entitled to a judgment. Baron Parkes concluded his judgment thus: "It is not for us to fritter away the true sense and meaning of these contracts merely with a view to make men careful. If any inconvenience should arise from their being entered into, this is not a matter for our interference, but it must be left to the Legislature, who may, if they please, put a stop to this mode which carriers have adopted of limiting their liability." This case was decided May, 1852.

1878<br>Special Term.<br><br>Maslin<br>v.<br>B. & O. R. R. Co.

In the case of *Walker* v. *York and North Midland Railway Co.*, 2 El. & Bl. 750, decided in 1853, the facts were these: The defendant had caused notices to be served personally on a number of fishermen at Scarborough, stating that they would not carry fish except subject to certain conditions limiting their responsibility. The fishermen made much objection to this. The notices were torn up; and something of a riot occurred. The court instructed the jury, that they might draw the inference from the service of the notice and the plaintiff subsequently sending the fish, unless the plaintiff had unambiguously refused to deliver the fish on the terms of the notice, and the defendant had acquiesced in that refusal. The verdict was for the defendant; and it was sustained by the court of Queen's Bench.

The rail road companies under these decisions, were enabled in a great measure "to evade altogether the salutary policy of the common law."

To correct this course of decisions Parliament enacted the 7th section of the railway and trafic acts of 1854, which is found much fault with on account of its obscurity; but when these previous decisions are considered the intention of the Legislature seems clear enough. So much of this section as bears upon the present discussion is in these words: "Every such company as aforesaid shall be liable for the loss of, or for any injury done to, any horses, cattle, or other animals, to any articles, goods, or things, in the necessary forwarding and deliv-

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

ry thereof, occasioned by the neglect or default of such company or its servants, notwithstanding any notice, condition or declaration made or given by such company contrary thereto, or in any wise limiting such liability, every such notice, condition or declaration being hereby declared null and void. Provided always that nothing herein contained shall be construed to prevent the said companies from making such conditions with respect to the receiving, forwarding, and delivering of any of the said animals, articles, goods or things as shall be adjudged by the courts or judges, before whom any question relating thereto shall be tried, to be just and reasonable. Provided also that no special contract between such company and other parties respecting the receiving, forwarding, or delivering of any animals, articles, goods or things as aforesaid shall be binding upon or affect any such party, unless the same be signed by him, or by the person delivering such animals, articles, goods or things, respectively for carriage."

Much controversy has arisen in the English courts in construing this act, which is certainly inartificially drawn and badly expressed. Thus it has been said by some judges, that a condition incorporated in a signed contract was not within the enactment in the beginning of this 7th section, &c. *Pardington* v. *South Wales Railway Company*, 1 H. & N. 392.

The true construction of this act is thus given by Lord Chief Justice Jervis: "The fair meaning of this section, as it seems to me, is this: the first branch of it declares, that all notices, conditions and declarations made and given by the company shall be null and void, in so far as they go to relieve the company from liability for loss or injury to goods, &c., in the receiving, forwarding and delivery thereof, occasioned by the neglect or default of the company or its servants. But then it goes on to provide in the next branch, that this shall not prevent the company from making such conditions, which shall be adjudged by the court or judge before

which any question relating thereto shall be tried, to be just and reasonable, and further though just and reasonable such condition and special contract shall not be binding, unless signed by the person sending or delivering the goods."

This construction was adopted by the Queen's Bench in *Peck* v. *North Staffordshire Railroad Co.*, and by the Exchequer Chamber in *McManus* v. *Lancashire and Yorkshire Railway Co.*; and was approved in *Peck* v. *North Staffordshire Railroad Co.* in the House of Lords. See House of Lords R., vol. 10, p. 473. So construed, so much of this act, as declared, that the special contract made by the shipper with the common carrier relieving it from any portion of its common law liability must be just and reasonable in law, or otherwise it should be void, was nothing but an affirmation of common law principles as held prior to the recent English cases made after the year 1832.

Various decisions have been rendered in England since the passage of this act, as to what exemptions by special contract are just and reasonable. The act was passed specially with · reference to those exemptions by special contract of all loss or damages by negligence of the servants of common carriers. This exemption under this act is of course unjust and unreasonable. But it is held, that there are other exemptions, which are also unjust and unreasonable and therefore void, though provided for by special contract.

. I shall not review the English cases on this subject further than to state, that in *Peck* v. *The North Staffordshire Railway Co*, 10 H. of Lords 473, it was held, that an exemption by special contract from loss or damage to marble chimneys, unless their value was declared, and they were insured, the rate of insurance being fixed at 10 per cent. on their declared value, was an unreasonable and unjust exemption and therefore void.

In New York the same inconsistent course of decisions have been followed as in England. For a long time the

New York courts resisted the attempts of common carriers to limit their common law liability, except for the purpose of procuring a disclosure of the character and value of articles liable to extra hazard and risk, *Cole* v. *Goodwin*, 19 Wend. 257 and *Gould* v. *Hill*, 2 Hill 623; they then advanced somewhat, extending the right of common carriers to exempt themselves from common law liability by special contract, the position maintained by them then being thus stated by Judge Campbell in *Dow* v. *The New Jersey Steam Navigation Company*, 4 Sandf. 136, decided in 1850. He says: "A common carrier has in truth two distinct liabilities, the one for loss by accident and mistake, then he is liable as an insurer; the other for losses by default or negligence, when he is answerable as an ordinary bailee. It would certainly seem reasonable, that he might, by express special contract, restrict his liability as insurer; that he might protect himself against misfortune, even though public policy should require, that he should not be permitted to stipulate for impunity, where the loss occurs from his own default or neglect of duty."

In apparent accord with these views were the decisions in the cases of *Parsons* v. *Monteath*, 13 Barb. 353, and *Moore* v. *Evans*, 14 Barb. 524.

In 1858 the Supreme Court advanced still further in the same direction, and held in *Wells* v. *The New York Central Railroad Co.*, 26 Barb. 641, that in case of a gratuitous passenger traveling on a free ticket a common carrier may stipulate against responsibility for negligence of its servants. And this judgment was affirmed by a majority of the Court of Appeals, 24 N. Y. 181. This decision was followed in *Perkins* v. *The New York Central Railroad Co.*, 24 N. Y. 196; and it was held, that this exemption might be extended to all kinds of negligence of its agents gross as well as ordinary. A considerable controversy then arose, as to whether a drover, who had a free pass to enable him to go with and care for his cattle, which were being transported for him,

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

was to be regarded as a free passenger under this rule, which had been laid down; and the judges were much divided in opinion on the question.

This controversy was decided by the judgment of the Court of Appeals in *Bissell* v. *The New York Central Railroad Co.*, 25 N. Y. 442; the majority of the court, four judges against three, holding, that a drover in such case was to be regarded as a free passenger. In this case they on this point reversed the decision of the case by the Supreme Court. See 29 Barb. 602. Nor was this decision in consonance with the decision in *Smith* v. *New York Central Railroad Co.* See 29 Barb. 132, and 24 N. Y. 222. Subsequent New York decisions have not only followed this decision, but have carried the right of a common carrier to exempt itself from its common law liability still further; and it may now be regarded as settled in New York, that a common carrier for hire may by special contract exempt itself from all responsibility or loss arising from the negligence of its servants, though this negligence be gross. See *Poncher* v. *New York Central Railroad Co.*, 49 N. Y. 263; *Cragin* v. *New York Central Railroad Co.*, 51 N. Y. 61; *Magnin* v. *Dinsmore*, 56 N. Y. 168; *Steers* v. *The Liverpool, New York and Philadelphia Steamship Company*, 57 N.Y 1.

But even in New York it is held, that while a common carrier may stipulate for exemption from liability for losses occurring through his negligence, yet his contract will not be construed to contain such exemption unless it is so expressly agreed. *Magnin* v. *Dinsmore*, 56 N. Y. 168.

The New York cases were carefully reviewed by the Supreme Court of the United States in *Railroad Co.* v. *Lockwood*, 17 Wall. 357; and the modern New York cases were disapproved.

There are cases in some of the other states, in which *dicta* of judges, and some decisions, either follow or favor more or less these modern New York decisions. In *Ashmore* v. *Pennsylvania Steam Towing Transportation*

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

Co., 28 N. J. (4 Dutcher) 180, the question we are considering was much discussed ; but a decision of it, the court considered, was not properly involved in the case ; and it was therefore waived. And in *Kinney et al.* v. *Central Railroad Co.*, 32 N. J. (3 Vroom) 407 it was decided, that a contract, that in consideration of a free passage a passenger will assume the risk of injuries to his person from the negligence of the servants of a railroad company, is valid in law ; but the court expressly waives deciding, whether . such a contract with a passenger who paid fare would or would not be valid.

In the case of *Lawrence* v. *New York, Providence and Boston R. R. Co.*, the special contract contained in the bill of lading provides : "that no responsibility will be admitted under any circumstances to a greater amount upon any single article of freight than $200.00, unless upon notice given of such amount and a special agreement therefor ;" and no negligence on the part of the railroad company or its agents appearing, it was held, that such contract as to the amount of the recovery was binding.

In *Kimball* v. *Rutland and Burlington Railroad Co.*, 26 Vt. 247, it was held, that a common carrier may by special contract with a shipper so change his relations as to become a private carrier, and in such case he can not be sued as a common carrier.

In *Illinois Central Railroad Co.* v. *Morrison*, 19 Ill. 136, it was held, that a common carrier might enlarge or diminish his liability by express contract, but not so as to exempt itself from gross negligence or wilful misfeasance of duty. And the same was held to be the law in *Illinois Central Railroad Co.* v. *Adams*, 42 Ill. 474, in which case it was held, that the failure of the conductor of a train to throw water on hogs being transported, which were in danger of dying from heat, was gross negligence, and no contract could protect the railroad company from liability therefor.

In *Hawkins* v. *Great Western Railroad Co.*, 17 Mich.

57, and *Same Case*, 18 Mich. 427, the court held, that a contract resembling the one in this case did not relieve the company, where the injury resulted from the insufficiency of the flooring of the cars and their breaking through during the transportation of the cattle, the contract being silent on the subject of the cars to be furnished; and that a suit against the company as common carriers was proper.

In the *B. & O. R. R. Co.* v. *Brady*, 32 Md. 333, the court lay down the general proposition, that by express contract a railroad company may limit its responsibility as a common carrier, but says nothing about the effect of negligence on their part.

These decisions and the *dicta* of judges in them give perhaps some countenance to the recent New York decisions; but the great mass of the American authorities are in direct and irreconcilable conflict with these recent New York cases. Thus in Pennsylvania it is settled by a long course of decisions, that a common carrier can not limit his liability so as to cover his own or his servants negligence. See *Furham* v. *Camden and Amboy Railroad Co.*, 55 Penn. St. 53; *Laing* v. *Colder*, 8 Penn. St. 479; *Camden and Amboy Railroad Co.* v. *Baldauf*, 16 Penn. St. 67; *Goldey* v. *Pennsylvania Railroad Co.*, 30 Penn. St. 242; *Powell* v. *Same*, 30 Penn. St. 414; *Pennsylvania Railroad Co.* v. *Henderson*, 51 Penn. St. 315; *Express Co.* v. *Sands*, 55 Penn. St. 140; *Empire Transportation Co.* v. *Wamsutter Oil Co.*, 66 Penn. St. 140. And we may observe, that the case of *Pennsylvania Railroad Co.* v. *Henderson*, above cited was the case of a drover's pass and the contract stipulated for immunity in case of injury from negligence of its agents or otherwise.

In Ohio by numerous decisions the law is settled, that a railroad company can not by special contract exempt itself from liability for losses occasioned by its negligence or that of its servants. See *Jones* v. *Voorhees*, 10 Ohio 145; *Davidson* v. *Graham*, 2 Ohio St. 131;

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

*Graham* v. *Davis,* 4 Ohio St. 362 ; *Wilson* v. *Hamilton,* 4 Ohio St. 722 ; *Welsh* v. *Pittsburgh and Fort Wayne Railroad,* 10 Ohio St. 75 ; *Cleveland Railroad* v. *Curran,* 19 Ohio St. 1 ; *Cincinnatti Railroad* v. *Pontius,* 19. Ohio St. 221 ; *Knowlton* v. *Erie Railway Co.,* 19 Ohio St. 260.

In the case of *Cleveland Railroad* v. *Curran,* above cited, it was held in relation to a drover's pass similar to the one in this case, that the holder was not a gratuitous passenger, and that in such case a contract exempting a company for loss by reason of the negligence of the company's servants would be void as contrary to public policy. It approves of the Pennsylvania cases above cited on this subject.

The main difference between the Pennsylvania and Ohio decisions is, that the former give to a special contract not in violation of public policy the effect of converting the common carrier into a special bailee for hire, whose duties are governed by the contract ; and if negligence is charged, it must be proved by the party injured ; whilst the latter hold, that the character of the carrier is not changed by the contract ; but he is still a common carrier, with enlarged exemptions from responsibility, within which the burden of proof is on him to show proper care and diligence, when an injury occurs. The effect of this difference is to shift the burden of proof from one party to the other. This diversity between the decisions of these two States is pointed out by Justice Bradley in the *Railroad Co.* v. *Lockwood,* 17 Wall. 370. Reason and justice are with the Ohio decisions on this point of diversity from the Pennsylvania cases.

In Maine it is held, that a railroad company cannot by express contract exempt itself from responsibility for damages, that may happen to cattle by their negligence, and that in such case it makes no difference, whether the negligence be ordinary or gross, such distinction in such case being untenable. See *Sayer* v. *Portsmouth, &c., R. R Co.,* 31 Me. 228, 238.

The same views are held by the courts of Massachusetts. See *School District* v. *Boston*, &c., *Railroad Co.*, 102, Mass. 552, 556. There are also numerous other cases in other States which are referred to in *Railroad Co* v. *Lockwood*, 17 Wall. 571, which are to the same purport. They are: *Indianapolis Railroad* v. *Allen*, 31 Ind. 394; *Michigan Southern Railroad* v. *Heaton*, 31 Ind. 397, note; *Flinn* v. *Philadelphia, Wilmington and Baltimore Railroad*, 1 Houst. (Del.) 472; *Orndorff* v. *Adams Express Co.*, 3 Bush 194; *Swindler* v. *Hilliard & Brooks*, 2 Rich. (S. C.) 286; *Berry* v. *Cooper*, 28 Ga. 543; *Steele* v. *Townsend*, 37 Ala. 247; *Southern Express Co.* v. *Crook*; 44 Ala. 568; *Whitesides* v *Thurhill*, 12 S. & M. 599; *Southern Express Co.* v. *Moon*, 39 Miss. 822; *New Orleans Mutual Insurance Co.* v. *Railroad Co.*, 20 La. Ann. 302.

The Supreme Court of the United States too, while holding that a common carrier for hire may exempt itself from certain common law liabilities by a special contract, holds, that it cannot exempt itself from responsibilities for any loss occasioned by any degree of negligence on its part or on the part of its servants. See *Jersey Steam Navigation Company* v. *Merchants' Bank*, 6 How. (U. S.) 383; *Philadelphia & Reading Railwry Company* v. *Derby*, 14 How. (U. S.) 486; *Steamboat New World* v. *King*, 16 How. 469; *York Company* v. *Central Railroad*, 3 Wall. 107; *Waller* v. *Transportation Company*, 3 Wall. 150; *Express Company* v. *Kountz Bros.*, 8 Wall. 342; *Railroad Company* v. *Lockwood*, 17 Wall. 357. And in such a case there is no distinction between negligence and gross negligence as laid down in the last case cited.

Precisely the same position is held by the Court of Appeals of Virginia. See *Virginia and Tennessee Railroad Company* v. *Sayers*, 26 Grat. 328. This was a case, in which there was a special contract for the transportation of cattle in consideration of reduced charges and a free pass to the shipper.

These authorities sustain the position, *that common*

*carriers for hire by special contract based on a valuable consideration may exempt themselves from losses or damages resulting from inevitable accident, though such accident was not the result of the act of God or of the public enemy, provided the negligence of the common carrier or its servants in no manner contributed to such accident; but a common carrier for hire by special contract, though based on a valuable consideration, cannot exempt himself from loss or damage, which has in any degree been caused by his own negligence or that of his servants.* This position is in consonance with the old decisions in England and New York; but the latter part of this proposition is opposed by the English decisions between 1832 and 1854 and by the recent New York cases; and this portion of the proposition is not sustained by a few scattering decisions in some of the States before referred to, and which, while not in direct opposition to it, may be regarded as to some extent conflicting therewith. The proposition is however fully sustained by the decisions in Pennsylvania, Ohio, Maine, Massachusetts, Indiana, Kentucky, South Carolina, Georgia, Alabama, Mississippi, Louisiana and Virginia, and also by the Supreme Court of the United States; and as controlled by this proposition, is the case of a drover traveling on a free pass to take care of cattle being transported for compensation. The railroad company being in such case considered as a common carrier for hire.

This proposition is in opposition to New York decisions; but the law was settled in New York by a divided court and in opposition to a decision of the Supreme Court of that State, and not in consonance with a previous decision of the Court of Appeals of that State. But on the other hand this proposition is held to be true by the Supreme Courts in Ohio, Pennsylvania and Virginia, and by the Supreme Court of the United States.

I have reviewed the authorities at some length, because there is a decision of the Supreme Court of Appeals of

1878 Special Term.

Maslin
v.
B. & O. R. R. Co.

the State of West Virginia, which is in conflict with the views I have expressed and with the great weight of authority. In the case of the *Baltimore & Ohio Railroad Co.* v. *Rathbone*, 1 West Va. 87, the court decides: "That it is competent for a common carrier to diminish and restrict his common law liabilities by special contract; and that he may, by express stipulations, absolve himself from all liability resulting from any and every degree of negligence however gross, if it fall short of misfeasance or fraud, provided that the terms and language of the contract are so clear and definite as to leave no doubt, that such was the understanding and intent of the parties."

This case was decided during the war. It was argued at some length, and no doubt all the authorities then accessible were examined by the counsel and court; yet few authorities were then accessible. The authorities referred to on this point by counsel were only the English and New York cases and the decisions of the Supreme Court of the United States up to that time. The court in its opinion cites but a single case. We have seen, that the recent New York and English cases are in conflict with the great weight of authority. A decision of such importance rendered by a court under such disadvantageous circumstances, and in conflict with both reason and the great weight of authority, though it be our own court, we cannot follow.

The Court in that case also drew a distinction between ordinary and gross negligence. In speaking of this distinction the Supreme Court of the United States in *Railroad Co.* v. *Lockwood*, 17 Wall. 382, 383, say: "We have already adverted to the tendency of judicial opinion adverse to the distinction between gross and ordinary negligence. Strictly speaking these expressions are indicative rather of the degree of care and diligence, which is due from a party, and which he fails to perform, than the amount of inattention, carelessness or stupidity, which he exhibits. If very little care is due from him,

and he fails to bestow that little, it is called gross care-lessness.  If very great care is due, and he fails to come up to the mark required, it is called slight negligence. And if ordinary care is due, such as a prudent man would exercise in his own affiairs, failure to bestow that amount of care is called ordinary negligence.

"In each case, the negligence, whatever epithet we give it, is failure to bestow the care and skill, which the situation demand ; and hence it is more strictly accurate perhaps to call it simply negligence.   And this seems to be the tendency of modern authorities (citing 1 Smith's Leading Cases 7 American ed. 453 ; Story on Bailments §571 ; *Wyld* v. *Pickford,* 8 M. & W. 460 ; *Hinton* v. *Dibbin,* 2 Q. B. 66 ; *Wilson* v. *Bret,* 11 M. & W. 113 ; *Beal* v. *South Devon Railway Co.* 3 H. & C. 337 ; *Grill* v. *Iron Screw Collier Co.* L. R. 1 Common Pleas 600 ; *Philadelphia & Reading Railroad Co.* v. *Derby* 14 How. 486 ; *Steamboat New Wold* v. *King,* 16 How. U. S. 474," to which I will add. *Virginia Tennessee Railroad Co.* v. *Sayers,* 26 Gratt. 348.   The Supreme Court adds :  "If these cases seek to abolish the distinction of degrees of care, skill and diligence required in the performance of various duties and the fulfilment of various contracts, they go too far ; since the requirement ot different situations is too firmly settled and fixed in the law to be ignored or changed."

The decided preponderance of authority is to hold a public carrier bound, whenever it is shown, that the loss or damage is occasioned by any negligence, whether gross, ordinary or slight, as shown by the above authorities.

The Court of Appeals of West Virginia has heretofore shown, that it doubted the position laid down in *Baltimore & Ohio Railroad* v. *Rathbone* 1 W. Va. 87 , when it laid down the law with much more caution in the *Baltimore & Ohio Railroad* v. *Skeets,* 3 West. Va. 559. The language of Judge Berkshire there is : "The authorities, so far as I have been able to extend my examination, are uniform to this point, and it seems well agreed, that by

express stipulation in the contract to that effect, they may at least exonerate themselves from all liability, that does not arise from the want of ordinary care and diligence on their part."

It remains to apply the law, as above laid down, to the present case. The two instructions given by the circuit court to the jury at the instance of the plaintiff are correct. The second, third, fourth and fifth instructions offered by the defendants were properly modified by the second, third, fourth and fifth instructions given by the court to the jury, or more properly speaking the defendant can not complain of the modifications of these four instructions made by the court.

The second instruction given by the court should have been further qualified by adding at its end : "Provided such modifications are just and reasonable in law ;" but the failure to so qualify it was no injury to the defendant; and so far as it might be inferred from these instructions, that to exempt the defendant from responsibility arising from the loss of the cattle by heat in no manner attributable to the negligence of the defendant or its agents or servants, it was necessary for them to rely on the special contract, the instructions would not be correct, as a loss from heat, unaccompanied by any negligence on the part of the defendant, would not have made the defendants responsible at common law as common carriers, as such loss would have arisen in such case only from the inherent qualities of the thing transported, that is from the vitality of the cattle. But this incorrect inference, which might be drawn from these instructions, could not possibly have been any prejudice to the defendant. As to him it was immaterial, whether his exemption from responsibility for loss by heat unaccompanied by any negligence on his part was the result of his common law liability, or of the special contract.

But the circuit court erred in refusing to grant the first and sixth instruction asked for by the defendant,

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

and in modifying them, as was done, by the first instruction given by the court. These two instructions asked by the defendant though differently worded propounded the same legal proposition substantially: No. 1 was in these words: "the court instructs the jury, that if they believe, from the evidence that the plaintiff put his cattle on the slow stock train of the defendant to be carried upon it to Baltimore, and paid the hire therefor there, then the plaintiff cannot under the pleadings in this cause recover any damages because of any failure of the company to furnish cars for the shipment of said cattle at an earlier or different time upon the request of the plaintiff." The court's modification of this instruction was by adding to the end thereof these words: "unless they further believe from the evidence, that the plaintiff was induced to put his cattle on said 'slow stock train' because of representations made to him by the defendant's agents, that transportation on said 'slow stock train' would be as safe and advantageous, as transportation on the regular stock train, and that said representations were not true."

Syllabus 5.    All of the counts in the declaration except the third are against the defendant either as a common or private carrier; and they in substance complain that the plaintiff delivered to the defendant as such carrier the cattle, and he failed to deliver them safely &c. The third count alleges, that the defendant had the care and custody of the cattle as bailee, and that while in its possession it took such bad care of them, that two of them died and others were injured. There is no possibility of holding the defendant responsible for the matters alleged in this instruction under any of the counts against it as a common or private carrier. Nor can it be held responsible, on account of the facts set forth in this instruction, under the third count against it as bailee, for there is no evidence certified as tending to show, that the defendant had the custody of the cattle as bailee, till they were put on its cars for shipment, and in fact the very modification of the in-

struction made by the court assumes, that the defendant was not bailee of the cattle till then, for it says : "unless they further believe from the evidence, that the *plaintiff* was induced to put his cattle on said slow stock train &c."

1878
Special Term.

Maslin
v.
B. & O. R. R. Co.

If they were put by the *plaintiff* on the slow stock train, they must, until that was done, have been in the plaintiff's charge and under his control; and the defendant as bailee could only be held, under this third count, responsible for bad care of them after that. And though the putting them in the hands of the defendant as bailee, after the regular stock train had left, and when the slow stock train was about to start, had been induced by the misrepresentation of the defendant's agents, yet under this declaration no recovery could be had for losses resulting from such misrepresentations, as there was no complaint of this character made in the declaration. And if the facts had been such as to justify an action against the defendant for its failure to supply cars to take off these cattle by the regular stock train, still, as the declaration made no complaint of such failure, and made no allegation of any breach of duty by the defendant in not supplying cars at the proper time, it would be no ground of recovery in this suit.

The court therefore erred in refusing the first and sixth instructions asked for by the defendant and in modifying the first instruction, as it did.

There was a demurrer to the declaration and each count thereof. I perceive no defects. The last two additional counts were against the defendant as a common carriers of cattle under a special contract. The defendant, a railroad company, is, as we have seen, a common carrier of cattle; and though the contract set out in these counts modified its responsibility as a common carrier, yet it did not change it into a private carrier, as we have seen. It was therefore properly declared against as a common carrier having its responsibilities modified by the special contract stated.

Syllabus 1.

The court then properly overruled the demurrer to the declaration and each count thereof.

The judgment of the circuit court rendered in this cause May 18, 1876, must be reversed and annulled; and the appellant must recover of the appellee its costs in this cause expended ; and the verdict of the jury must be set aside, and a new trial awarded and the case remanded to the circuit court of Mineral county to be then proceeded with according to the principles laid down in this opinion, and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.