# CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
## v.
# C. J. OWEN.

*Railroads—Injuries to a Calf while in Transportation—Vicious Disposition—Review of Evidence—Negligence—How Determined.*

1. Whether a given act is negligent or improper is to be determined by the surroundings and conditions existing at the time, and which were, or ought to have been, known to the party sought to be charged.
2. In an action against the appellant, as a common carrier, to recover damages for injuries to a calf alleged to have been sustained while in transportation through the negligence of the defendant's servants, it is *held:* That the verdict in favor of the plaintiff is not supported by the evidence; that the calf was properly unloaded at the depot instead of at the stock pen; that, from the evidence presented, the injury resulted from the calf's vicious disposition, unprovoked by any misconduct by the defendant or its servants, and that an instruction limiting the exceptions to the defendant's liability to the act of God and the public enemy, was erroneous.

[Opinion filed November 20, 1886.]

APPEAL from the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

Messrs. J. F. CARROTT and O. F. PRICE, for appellant.
The law has introduced an exception in favor of the carrier of live stock, of unaccountability for its loss or injury resulting from its own uncontrollable vicious propensities, and damages

incident to its carriage from its inherent natural character. Angell on Carriers, Sec. 214; Hutchinson on Carriers, Sec. 222; Whart. on Negl., Sec. 615; Cragin v. N. Y. Cent. R. R. Co., 51 N. Y. 61; Smith v. N. H., etc., R. R. Co., 12 Allen, 531; W., St. L. & P. R. R. Co. v. McCasland, 11 Ill. App. 491; C., R. I. & P. R. R. Co. v. Harmon, 12 Ill. App. 54; I. C. R. R. Co. v. Brelsford, 13 Ill. App. 251.

There was no instruction in this case on behalf of the defendant, which stated that the defendant, under law, was not an insurer of the safety and delivery of live stock placed in its charge for transportation; and even if there had been, the second instruction given for plaintiff would still have been misleading and erroneous, as a correct instruction given for one side will not obviate an error in an instruction on the other side. C., B. & Q. R. R. Co. v. Payne, 49 Ill. 496; Adams v. Smith, 58 Ill. 417; Baldwin v. Killian, 63 Ill. 550; Quinn v. Donovan, 85 Ill. 194; Illinois Linen Co. v. Hough, 91 Ill. 63; W., St. L. & P. R. R. Co. v. Schacklet, 105 Ill. 364.

Messrs. BONNEY & WOODS, for appellee.

A verdict will not be set aside where the evidence is conflicting, even though it may be against the weight of the evidence. Morgan v. Ryerson, 20 Ill. 343; Millikin v. Taylor, 53 Ill. 509.

Where the evidence is conflicting and the circumstances tend to support the verdict, it will not be disturbed. Gill v. Crosby, 63 Ill. 190.

Where the evidence is conflicting, and that produced by either party, considered alone, is sufficient to require a verdict in his favor, a new trial will not be granted on the ground that the verdict is not sustained by the evidence. Lewis v. Lewis, 92 Ill. 237.

Where there is evidence from which the jury could properly find their verdict, it will not be disturbed, though the evidence may, in the opinion of the Supreme Court, justify a different result. T., W. & W. R. R. Co. v. Moore, 77 Ill. 217.

Common carriers are liable for all accidents and injuries

freight may receive, except from the act of God and the public enemy.   C., B. & Q. R. R. Co. v. George, 19 Ill. 510 ; Merchants' Des. Tr. Co. v. Kahn, 76 Ill. 520.

The carrier of cattle is not responsible for injuries resulting from their viciousness of disposition, but the question, what was the cause of the injury, is one of fact for the jury. Hall & Co. v. Renfro, 3 Met. (Ky.) 51.

A delivery or tender of the goods must be at a reasonable time and place, and the manner in which the same are delivered must be reasonable, and these are questions of fact for the jury to determine.   2 Redfield on Railways, 78 ; Hill v. Humphreys, 5 Watt & S., 123 ; Segura v. Reed, 3 La. Ann. 695; Gibson v. Culver, 17 Wend. 305; Fisk v. Newton, 1 Denio, 47.

PLEASANTS, P. J.   Appellee shipped a Polled Angus bull calf from Abingdon, in Knox County, by appellant's freight train, which left at 6 o'clock A. M., to Camp Point in Adams County, where it arrived at 11 o'clock of the same morning.   The animal was tied with a rope some ten feet long attached to a ring in a short leathern halter.   It was unloaded from the car on the passing track to the platform at the north end of the depot.   Until untied to be so unloaded, it had appeared gentle enough, so far as is known, but then and thenceforth showed an uncommon degree of wildness and viciousness.   The brakeman who was taking it out, being unable to hold it, was assisted by others, mostly train hands, and with considerable difficulty got it around to and through the door at the east end into the freight room, which was about twenty-five by forty-five feet in area.   When those who had been assisting, apparently supposing the struggle was over, let go their hold of the rope and turned to withdraw, it suddenly attacked and butted them in turn with such fury that the whole party escaped by one way or another as quickly as they could, leaving it alone and unfastened.   They immediately re-assembled in the office, west of and adjoining the freight room.   The door between them was opened a little way and as the calf came to or was passing near it some one, reaching out, caught the rope and drew it in.

While Mr. Sweet, the engineer of the train, was holding it with one hand and the other stretched out to or toward the animal's head, appellee came up and took hold of it also, but in a moment or so the calf jerked away, ran across to and against the east door, which was then also a little open, and by a second rush threw it off its bearings and escaped. It ran up along the railroad track three quarters of a mile and broke through a board fence into a pasture. The station agent immediately sent two men on horses to recapture it. They found it standing in mud and water, knee deep, with other cattle, and were unable by reason of its viciousness to drive it alone. When they attempted to do so it attacked them, on foot and on horseback. Finally by driving others with it they succeeded in getting it back to the station and into the stock pen. Then, after it had broken one rope with which it was tied to a post, appellee secured it with two others, and with the assistance of two men got it to his place, nearly a mile away, where on arrival it laid down and within an hour died.

There was no external mark of injury upon it and appellee and his witnesses suppose its death was caused by overheating from rage and violent action. No other evidence on that point was offered. The calf was six months old, and of extraordinary size and strength for its age, its weight being six hundred pounds or more. Appellee and his vendor testified it was worth $450.

This suit was brought upon the implied contract of appellants, as a common carrier, to safely transport and deliver it. The plea was the general issue, and the verdict was for the plaintiff for $450, on which the court, after refusing a new trial, entered judgment.

We think this verdict should have been set aside as being unsupported by the evidence. From the declaration and the testimony we should be at a loss to conjecture the particular breach of contract or act of negligence on which the plaintiff relied for a recovery. The argument alone discloses them. They are limited to the place at which the calf was unloaded, the teasing to which it is said to have been subjected, and the leaving the east door of the freight room partly open.

It would be useless to discuss the evidence at length; the conclusions to which we are irresistibly drawn will be briefly stated.

*First.* It was usual to unload a single head of live stock at the depot, and not at the stock pen, which was 300 feet east and north of it and upon another track. The plaintiff must be presumed to have known this, and assented in this instance, as he was expecting the calf by this train and had made no request on that subject. The north platform was very nearly on a level with the car floor. If the calf could have been tied in the freight room it would have been in as safe a place for it and as convenient for the plaintiff as the stock pen. Before it was unloaded there was no reason to suppose it could not be so tied.

Whether a given act is negligent or improper is to be determined by the surroundings and conditions existing at the time and which were or ought to have been known to the party sought to be charged. It is easy to see, after a calf has broken an apparently suitable rope, that it might have been secured by a log chain, but that does not tend to prove the use of the rope was improper.

*Second.* The number of persons engaged in getting the calf into the freight room was necessary, and made so by its disposition and action. Plaintiff's witness who so assisted, and was not an employe of the defendant, says " it was about all they wanted to do;" and another that "it took their united strength to hold him." There is no contradiction of this, nor any particle of evidence that in this operation they at all abused him in respect to either his body or his temper.

When they left the freight room the east door was completely closed, though not fastened, as it ought not to have been, since occasion for entering it was constantly recurring. It was a safe-guard, as closed, being a sound and heavy freight door, resting on rollers upon a track. While the calf was being held at the west or office door, Mr. Harris, who was not in the employ of the company, came in at the east and left it open, as he says, about three inches. The calf, after jerking away from Sweet and the plaintiff, ran directly at Harris and then shied

to the door, striking it heavily with his head and shoulder, and by a second rush threw it far enough off its bearings to "squeeze through." His escape should be charged not to any defect in the door, nor to the line of light through the three inch opening, but to his own furious wildness, which the company's agents had no reason to anticipate.

But the point most confidently presented for plaintiff is founded upon his statement that when he came up to take hold of the rope, at the office door, Sweet was holding it with one hand and "punching" at the calf, "this way," while it was "butting up at the door at him; " that they were just having a good time," and that he then " told Sweet not to tease it in that way." Just how he described by imitation the action which he described in terms, as "punching," is not shown, but no other witness appears to have suspected that he was intending to tease it. Mr. Sweet, himself, swears he was trying " to pet and pacify it." His action, so far as disclosed, was no less consistent with that purpose than with the one suspected by plaintiff, and as such was proper and natural—for who ever held a vicious, wild or frightened animal and did not try, if he safely could, to stroke his head? To tease it was forbidden by his duty, and such a purpose is not to be presumed.

The manner in which defendant's witnesses related the circumstances of their overthrow and chase by this active, vigorous and mad young bull, is largely commented on as throwing a light upon their real aims and actions, which it is lamented this court can not have.

A situation altogether serious in experience may be unavoidably comical in narration. We have been amused at the scene as presented in words on cold paper, and can readily understand how the account, as given on the witness stand, must have appeared ludicrous even to the victims who were giving it, although they were sober-minded men, intent on business and duty only at the time of the occurrence, but can not regard that fact as a circumstance tending to impeach their claim, made on oath, to have acted in good faith.

The recapture of the calf and the means employed for that purpose were according to the request of the plaintiff. He does not complain of anything in that connection.

It is shown that no mark of violence or injury appeared upon its body. It received no hurt directly from its transportation or delivery, but came to its death by overaction and overheating from its own disposition, unprovoked by any misconduct of the defendant or its servants.

For injuries resulting from such a cause the carrier is not liable. The second instruction limiting the exceptions to the act of God and of the public enemy, is conceded to be wrong in itself, and we doubt if it was cured by the third, which, it is said, included under the first of these exceptions the natural temper and disposition of the calf.

For these reasons the judgment will be reversed and the cause remanded.

*Reversed and remanded.*