FRICK, C. J., and McCARTY, J., concur.

---

## RICK v. WELLS FARGO COMPANY.

No. 2190.   Decided May 5, 1911 (115 Pac. 991).

1. CARRIERS—LIVE FISH—CARE—DUTY OF CARRIER. In a suit against an express company for death of young trout in transit, it was error to assume as a matter of law that the fish were afflicted with such latent infirmity as to require the shipper to notify the company what to do in caring for them in transit; the necessity for such notice being properly found upon evidence as a question of fact. (Page 136.)

2. CARRIERS—ACTIONS — NEGATIVE FINDINGS — WANT OF EVIDENCE. The rule that a negative finding may be made where there is no evidence to sustain an affirmative issue applies where the burden of proof is upon the party against whom the finding is made, but did not apply to a question whether a carrier of live fish negligently cared for them; the burden to show care being on it. (Page 137.)

3. CARRIERS—LIVE FISH — CARE IN TRANSPORTATION — BURDEN OF PROOF. The burden was on an express company sued for death of young trout to show why it did not deliver the shipment in as good condition as that in which it was received, in the absence of a special contract limiting the company's duty. (Page 138.)

4. CARRIERS—LIVE FISH—CARE IN TRANSIT. That an express company's employee used due care and diligence according to his best knowledge does not excuse liability for death of part of the fish; the company's duty being fixed by law, and not measurable by the employee's knowledge. (Page 138.)

5. CARRIERS—LIVE FISH—CARE IN TRANSIT. A finding that an express company was not negligent in "transporting" live fish does not show that care was used in handling the shipment. (Page 139.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by P. M. Rick against the Wells Fargo Company.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED, for new trial.

*Geo. B. Hancock* for appellant.

*Allen T. Sanford* for respondent.

FRICK, C. J.

Appellant brought this action against the respondent, as a common carrier, to recover damages which were caused by the death of 19,500 "young trout fish" through the alleged negligence of respondent while being transported by it from Salt Lake City to Elsinore, Utah. In the complaint appellant, in substance, alleged that respondent was engaged

in the business of a common carrier; that in April, 1908, at Salt Lake City, Utah, it received for transportation from one C. Vadner for plaintiff about 20,000 "young trout fish" in good condition, to be transported by respondent by express from said Salt Lake City to the plaintiff at Elsinore, Utah; "that owing to the negligence of the defendant (respondent) and its agent and the unskillful and careless manner in which said defendant handled said fish during their transportation, and owing to the failure and neglect of defendant and its agent to sufficiently agitate the water in which said fish were contained, 19,500 of said fish died in transportation and while in the care and custody of the defendant." Appellant also alleged demand and refusal to pay the amount claimed by him, and that the value of the fish was ninety-seven dollars and fifty cents, and that the express charges which had been paid by appellant amounted to ten dollars and fifty cents. Upon the foregoing allegations he prayed judgment for one hundred and eight dollars. The respondent filed an answer in which it admitted that it was engaged in the business alleged in the complaint; admitting that 20,000 young trout were shipped by Vadner to appellant at Elsinore, Utah; admitted the demand and refusal to pay the alleged claim for damages; admitted that appellant paid ten dollars and fifty cents as express charges, and that approximately 19,500 "of said fish died in transportation." For further answer respondent denied the value of the fish to be as alleged, and further denied "each and every other allegation of the complaint." Upon the issues thus joined the case was tried and submitted to the court without a jury. The court found the material facts substantially as follows: That about the 8th day of March, 1908, appellant purchased from one C. S. Vadner, at Salt Lake City, Utah, 20,000 young trout fish; that said fish were by said Vadner at Salt Lake City, Utah, at said time, delivered to respondent for shipment, and were by it received in good condition to be transported from said Salt Lake City to Elsinore, Utah; "that in order to safely transport young trout, such as were shipped by the plaintiff, it is necessary that

they have special care and attention, in that the water shall be frequently aerated by lifting up the water in a cup and pouring it into the vessel containing the fish; *that the plaintiff or his agents in shipping said fish gave the defendant no notice or instructions that any special care or attention was required, and the defendant's employee or agent in handling said fish used due care and diligence according to his best knowledge and information in handling fish;* that in the transportation of said fish, owing to the fact that the water was not sufficiently aerated, 19,500 of said fish died, of the value of ninety-seven dollars and fifty cents." As a conclusion of law the court found that respondent was "not guilty of any negligence in the transportation of said fish." Judgment therefore was rendered in favor of respondent, from which this appeal is prosecuted.

The first error assigned by appellant is that the court erred in finding the facts we have italicized for the reasons that they are outside of the issues presented by the pleadings, and wholly unsupported by any evidence. If the facts objected to are material and the contentions of appellant as we have set them forth are correct, then we think the court erred in making the findings, and that such error is prejudicial. First, then, were the facts which are objected to material to the just and proper disposition of the case? · This depends upon the law applicable to a state of facts such as is disclosed by the pleadings. From the findings which are assailed, it is clear that the trial court proceeded upon the theory that the young trout belonged to that class of freight which was afflicted with some inherent latent weakness, infirmity, or vice which the owner or shipper was required to make known to the carrier, so that the carrier might guard against the consequences arising therefrom either by refusing to receive and transport the freight in the condition it was presented for transportation, or until he had time, if such was necessary, to make preparation to handle the same safely. The court must have concluded that the failure to impart notice of the infirmities aforesaid to respondent amounted to a concealment or fraud upon it which prevents

the appellant from recovering in case the fish were injured or destroyed while in transport by some of the infirmities aforesaid and without special negligence upon the part of respondent in transporting them. The law in this respect is admirably stated by the author of Hutchinson on Carriers in volume 1, sections 341, 342, 343, as follows:

"Sec. 341. The carrier of living animals as freight is, however, by the great weight of authority to be regarded as a common carrier as to such freight, and not as a special agent of the owner for their transportation as has been sometimes contended. But, as the law has introduced by implication into every contract for the carriage of goods an exception to the carrier's liability in case where the loss to them, whilst in his charge, has been occasioned by the act of God or of the public enemy, or by their own decay from an inherent infirmity, or by the fault of the owner himself, so it has from the necessity and justice of the case introduced an exception in favor of the carrier of live stock, of accountability for its loss or injury resulting from its own uncontrollable vicious propensities, and the damages incident to its carriage from its inherent natural character. And this question as to the relation in which the carrier stands to such freight is of more importance than might at first be imagined, as, if he is to be treated in its transaction as a common carrier, he becomes an insurer, as in the case of other goods, against loss from every cause except the acts of God or of the public enemy or of the animals themselves, unless he has further protected himself by his contract, and, in case of loss or of injury to the freight, the burden of proving that it arose from its own fault rests upon him if he would excuse himself upon that ground.

Sec. 342. But while it is always competent for the carrier to show in his defense that the injury resulted from the peculiar nature or inherent vices of the animals themselves, and thus excuse himself from liability if it appear that he has been guilty of any negligence and that such negligence contributed to the injury, the excuse can no longer avail him. It is his duty to exercise at all times ordinary care in guarding the stock against such injuries as are likely to result from their natural propensities, and which, in view of the character of the animals, can reasonably be foreseen and provided against; and for a failure to do so whereby the animals caused themselves injury he will be liable.

Sec. 343. It is clearly the duty of the shipper to disclose, if requested, any peculiarities or infirmities of the animals, known to him and not to the carrier, which would increase the risk of carriage in the usual manner or require greater precautions for their safety than those usually requisite; and so, without request, it would be the duty of the shipper to disclose such peculiarities or infirmities not known to the carrier and not discernible from the appearance

or condition of the animals, and the carrier would not be liable, in the absence of such a disclosure, where, having used the care and diligence usually requisite, and injury was sustained proximately owing to such peculiarity or infirmity. But a failure so to disclose would not relieve the carrier for a loss proximately caused by his own negligence, nor could he complain of the failure to disclose a condition of things evident from the appearance of the animal itself."

In *Beard v. Ill. Cent. Ry. Co.,* 79 Iowa 520, 44 N. W. 801, 7 L. R. A. 280, 18 L. R. A. 381, the Supreme Court of Iowa, speaking through Mr. Justice Beck, states the rule thus:

"A carrier's duty is not limited to the transportation of goods delivered for carriage. He must exercise such diligence as is required by law to protect the goods from destruction and injury resulting from conditions which in the exercise of due care may be averted or counteracted. He must guard the goods from destruction or injury by the elements, from the effects of delays, indeed from every source of injury which he may avert, and which, in the exercise of care and ordinary intelligence, may be known or anticipated. Unknown causes, or those which are inherent in the nature of the goods, and cannot be, in the exercise of diligence, averted, will not render the carrier liable. The nature of the goods must be considered in determining the carrier's duty. Some metals may be transported in open cars. Many articles of commerce, when transported, must be protected from rain, sunshine and heat and must have cars fitted for their safe transportation. Live animals must have food and water, when the distance of transportation demands it. Fruit, and some other perishable articles, must be carried with expedition and protection from frost. So the carrier must attend to the character of the goods he transports. He is informed thereof by inspection of the freight bills, or by other papers accompanying the shipment."

The same doctrine is announced in *Carpenter v. B. & O. Ry.,* 6 Pennewill (Del.) 15, 64 Atl. 253; *Maslin v. B. & O. Ry.,* 14 W. Va. 189, 35 Am. Rep. 748, and in 4 Elliott on Railroads, section 1546. Numerous cases are cited in the foregoing cases and by Elliott, to which it is not necessary to refer.

Assuming, therefore, that the theory outlined in the court's finding is supported by the great weight of authority, yet we cannot see upon what issue or evidence the

court based the finding which is assailed by appellant's counsel. The court must have assumed as a matter of law that the trout required special care and attention while in transit between Salt Lake City and Elsinore, Utah, a distance of approximately one hundred and seventy-five miles, and, further, that the respondent neither knew nor had the means of knowing that the trout required such special care and attention. The court further assumed without proof, so far as the record discloses, that the shipper failed to impart notice to the carrier that the trout required special care and attention and also failed to impart notice to it of what such care and attention consisted. That the court apparently treated these matters as questions of fact is clear enough, or he would not have made the findings complained of. In view, however, of the pleadings and the evidence, there is much force to appellant's contention that he had no opportunity to meet such an issue by presenting any evidence upon the question, and hence has never had his day in court upon that subject. Can it be assumed as a matter of law that young trout are afflicted with such a latent infirmity that the carrier who accepts them for transportation in good condition by express, which every one knows is the speediest and perhaps safest method of transporting live property, like young fish, must be expressly told what he must do in taking care of them while in transit? May it not be a fact that the transportation of young trout has become of such frequent occurrence that express companies are or should be prepared to transport them safely without express directions from the shipper? At all events, must not the foregoing questions as well as whether the shipper or the carrier was negligent, and, if so, which one's negligence was the proximate cause of the loss be established by evidence as a matter of fact and not assumed as a matter of law? In *Chicago, B. & Q. Ry. v. Owen,* 21 Ill. App. 339, the court had under consideration a similar question with regard to the transportation of a valuable calf which while in transit had to be handled by the train and station men. The calf, by reason of its unruly disposition, required

the handling, and by reason of it became overheated and died. The court, in speaking of whether the trainmen in handling the calf were negligent or not, at page 343 said: "Whether a given act is negligent or improper is to be determined by the surrounding circumstances and conditions existing at the time and which were or ought to have been known to the party sought to be charged." So may it also be said of anything omitted as well as of any act of commission. It may be that the duties of the carrier with respect to the care to be given to hogs, cattle, sheep, and horses while in transit have in certain districts of this country become so generally known that, in case the facts are not in dispute, a court may say as a matter of law, whether the carrier was negligent or not with regard to given conduct. From the record before us, however, it would seem that the care which young trout require while in transit is rather a matter that must be left to those who are familiar with the nature and requirements of the fish, and whether the carrier or the shipper was negligent or not must be determined from the evidence and surrounding circumstances. The court, therefore, made a finding upon a subject upon which the parties have not been heard and upon which there was no competent evidence.

Nor can it, under the circumstances, be said that the finding in question was proper because it was merely a negative finding, and that such a finding may be made in any case where there is no evidence in support of an affirmative issue. No doubt, when the burden of proof is upon the party against whom the negative finding is made, the foregoing rule is applicable. (*Tate v. Rose,* 35 Utah 229, 99 Pac. 1003.) In the case at bar, however, the burden of proof with respect to whether the respondent as a common carrier took proper care of the trout while in transit was upon it.

The respondent admitted that it received the trout for transportation, and that about 19,500 of them died while in transit, and the court found that they were in good condition when respondent received them. In view, therefore,

of the duty that the law imposes upon common carriers, the burden of proof was upon the respondent to show why it did not deliver the trout in as good condition as they were when they were received by it. The rules with respect to the burden of proof in cases where live animals are transported by a common carrier and are injured while in transit is well stated by Mr. Justice Vanderburgh in the case of *Boehl v. Chicago, M. & St. P. Ry.*, 44 Minn. at page 192, 46 N. W. 334, in the following language:

"And it is enough to make a prima facie case against him (the carrier) that the owner allege and show the delivery of the property to the carrier and the nature of the loss or damage suffered during its transit. It will then devolve on the carrier to show that such injury was caused without his fault and through the inherent nature or propensity or 'proper vice' as it is sometimes called of the animals transported."

This rule applies where it is claimed that the animals were injured through the negligence of the common carrier as well as in other cases, unless the action is based upon a special contract which limits the duties of the carrier in that regard. This rule is illustrated and applied in the case just referred to.

We are of the opinion, therefore, that the finding objected to was upon a material element in the case, that it is not supported by the evidence nor the pleadings, and that it does not fall within the class of negative findings which may be based upon the absence of evidence for the reason we have given. The court therefore erred in making said finding, and the error was prejudicial to appellant's rights. Neither, can we see how the finding that respondent's "agent in handling said fish used due care and diligence according to his best knowledge and information in handling fish" can aid respondent. It may be that an employee of a common carrier may have used due care "according to his best knowledge and information," and yet the care he used may have fallen far short of that care which the carrier was bound to exercise in discharging his duty to the shipper. The employee's knowledge upon the subject may have been greatly lacking, or his information may have

been wrong. The carrier can, however, not shield himself in that way. He must at his peril apply that degree of care in transporting property of all kinds which the law imposes, and can excuse himself only in the manner and under the conditions pointed out by the authorities we have quoted from.

Nor does the fact that the court in its conclusions found "that the defendant was not negligent in the transportation of such fish" change the result. Such a conclusion, under the issues, could only have reference to the means used by respondent in transporting the fish and not to their care while in transit. But, entirely apart from what we have already said with respect to the burden of proof, we think that such burden in this case, in view of the unqualified admissions in the answer, was upon respondent to show that the fish died from some inherent vice or infirmity, the consequences of which could not, by the exercise of reasonable care, have been obviated. In other words, the burden was upon respondent to show that it was free from fault in taking care of the fish as well as being so in other respects. Further, we think the court should make special finings upon the questions (or, if the case be tried to a jury, that they be required to find, under proper instructions) whether the respondent was entitled to special notice with respect to what care the trout required while in transit, or whether such notice was given or not, or whether respondent, in view of the business it was engaged in, ought to have had knowledge of the special care that young trout require in transit, and whether the trout died from some latent inherent infirmity or vice.

For the foregoing reasons, the judgment is reversed, the cause remanded to the district court, with directions to grant a new trial, and to permit the parties to amend their pleadings if they are so advised, and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

McCARTY and STRAUP, JJ., concur.